[Crim. No. 8266.    Second Dist., Div. Two.    Mar 14, 1963.]

THE PEOPLE, Plaintiff and Respondent, v. JACK
FINSTON, Defendant and Appellant.

David Daar for Defendant and Appellant.

Stanley Mosk, Attorney General, William E. James, Assistant Attorney General, and Jack K. Weber, Deputy Attorney General, for Plaintiff and Respondent.

HERNDON, J.—Appellant Jack Finston appeals from a judgment entered following a nonjury trial convicting him of four counts of forgery in violation of section 470 of the Penal Code and one count charging him with grand theft in violation of section 487 subdivision 1 of the Penal Code.

Appellant does not question the sufficiency of the evidence to sustain the convictions. This evidence, in substance, revealed that appellant had been employed by Howell Chevrolet Company, first as a salesman, and later in a quasi-managerial position, during a period beginning early in 1958, and ending on December 5, 1960. It was developed in connection with the four forgery counts that it had been the policy of this company to make refunds to purchasers of automobiles in cases in which it was determined, after the execution of the contract of sale, that the amount of the existing encumbrance on the customer's "trade-in" was less than had been estimated at the time of sale. Four checks covering such refunds were deposited in appellant's bank account after the customer's signatures of endorsement had been forged thereon.

The grand theft count was based upon evidence regarding five different transactions during a one-year period wherein it was established in each instance that appellant had been guilty of a theft. Four of these transactions involved the deposit into appellant's bank account of "referral" checks upon which the payees' endorsements had been forged. The evidence in regard to the "referral" checks indicated that the company followed a practice of paying various sums to persons who referred customers to the firm when sales resulted therefrom. In each instance, the party named as payee was either admittedly fictitious or had not actually referred the customer or authorized appellant to endorse his signature on the check or to receive the proceeds thereof.

The fifth transaction related to a secret profit received by appellant in connection with his private sale of a company owned automobile. Evidence of all of these transactions was introduced at appellant's preliminary hearing. In addition to the transactions above described, evidence was introduced at the trial tending to prove that appellant similarly had deposited 12 additional forged checks to his account.

Appellant's defense to the theft charge was essentially a claim that his procedure as above described had been authorized by his employer. However, the president of the company testified that no such authorization had been given. Appellant correctly recognizes the time-honored rule that it is

not within our province to reweigh the evidence or to judge the credibility of the witnesses. Appellant offered no real defense to the forgery counts other than to assert that he did not know the payees' signatures on the refund checks had been forged; however, he admitted knowing the fictional character of the referral checks.

Two assignments of error are urged as grounds for reversal. First, appellant contends that, "The 1955 amendment to Penal Code section 487.1 [§ 487, subd. 1] establishes an unconstitutional classification abridging guarantees of equal protection of the law under the state and federal Constitutions." As set forth in his brief: "Appellant submits that singling out 'servants, agents or employees' from all other groups of society and applying as to them a different and increased standard of criminal responsibility is unreasonable." Further, "The classification fails in logic and reason when it penalizes only the servant while beyond its pale are all persons precisely situated who are subjects of equal trust and confidence by their victims, such as independent contractors, friends, relatives, neighbors, and family members."

We deem this contention to be wholly without merit. As stated by our Supreme Court in *Martin* v. *Superior Court*, 194 Cal. 93, 101 [227 P. 762], and repeated in *In re Herrera*, 23 Cal.2d 206, 212 [143 P.2d 345] : "The authority and the duty to ascertain the facts which will justify classified legislation must of necessity rest with the legislature, in the first instance, to whom has been given the power to legislate and not to the courts and the decision of the legislature in that behalf is ordinarily conclusive upon the courts. Every presumption is in favor of the validity of the legislative act and the legislative classification will not therefore be disturbed unless it is palpably arbitrary in its nature and neither founded upon nor supported by reason."

"A general rule, and one which has been so universally followed as to require no citation of authority therefor, is that where a statute is made to apply equally as to all persons embraced within a natural class, the constitutional provisions directed against special legislation, lack of uniformity in the operation of the law, and the like, are not violated." (*People* v. *Dawson,* 210 Cal. 366, 370 [292 P. 267].)

And, as the Supreme Court of the United States has stated: " '[A] State may classify with reference to the evil to be prevented, and . . . if the class discriminated against is or reasonably might be considered to define those from whom

58

the evil mainly is to be feared, it properly may be picked out. A lack of abstract symmetry does not matter. The question is a practical one dependent upon experience. The demand for symmetry ignores the specific difference that experience is supposed to have shown to mark the class. It is not enough to invalidate the law that others may do the same thing and go unpunished, if, as a matter of fact, it is found that the danger is characteristic of the class named.' [Citation.]

*"Even less should a legislature be required to hew the line of logical exactness where the statutory distinction challenged is merely one which sets apart offenses subject to penalties of differing degrees or severity, not one which divides the lawful from the unlawful.* 'Judgment on the deterrent effect of the various weapons in the armory of the law can lay little claim to scientific basis. Such judgment as yet is largely a prophecy based on meager and uninterpreted experience. . . .

". . . Moreover, the whole problem of deterrence is related to still wider considerations affecting the temper of the community in which law operates. The traditions of a society, the habits of obedience to law, the effectiveness of the law enforcing agencies, are all peculiarly matters of time and place. They are thus matters within legislative competence.' [Citation.]" (Italics added.) (*McGowan* v. *Maryland,* 366 U.S. 420, 541-542 [81 St.Ct. 1101, 6 L.Ed.2d 393].)

It is at once apparent that "servants, agents or employees" constitute a class so reasonably identified as to justify classified legislation in the first instance. Certainly we cannot say that the Legislature's determination to increase only the *degree* of crime where the members of such a class commit a series of thefts from their superiors over a period of time is "palpably arbitrary in its nature and neither founded upon nor supported by reason." This is particularly true where, even prior to the 1955 amendment to section 487, subdivision 1 of the Penal Code, a series of wrongful acts were counted together to form one offense when they were committed in the pursuit of a general plan of taking property from an employer. (See *People* v. *Howes,* 99 Cal. App.2d 808, 818, et seq. [222 P.2d 969], for an extended discusssion of the rule and its complexities.) That the Legislature thereafter determined to settle these technical complexities, at least in the field occupied by servants, agents or employees, appears to be well within its province and discretion.

Appellant's second assignment of error is that he was denied due process of law in that the fifth count of the infor-

mation, charging grand theft, "failed to apprise him of the nature of the offense charged sufficiently to enable him to prepare his defense." However, appellant quite correctly concedes by quoting from *People* v. *Roberts,* 40 Cal.2d 483, 486 [254 P.2d 501], that "Notice of the particular circumstances of the offense is given not by detailed pleading but by the transcript of the evidence before the committing magistrate (or the grand jury) ..." (See also *People* v. *Anderson,* 55 Cal.2d 655, 657 [12 Cal.Rptr. 500, 361 P.2d 32].)

It is manifest from appellant's argument in support of this assignment that the true thrust thereof is not that the information failed to apprise him of the nature of the offense charged, but rather that it was improper to allow evidence to be presented concerning 12 similar transactions in addition to the four that formed the bases of the four forgery counts and the five that formed the bases of the grand theft counts as developed at the time of the preliminary hearing.

In California, the test to determine the admissibility of evidence of other offenses has been thus stated: " ' [D]oes it tend logically, naturally, and by reasonable inference, to establish any fact material for the people, or to overcome any material matter sought to be proved by the defense? If it does, then it is admissible, whether it embraces the commission of another crime or does not, whether the other crime be similar in kind or not, whether it be part of a single design or not.' " (*People* v. *Sykes,* 44 Cal.2d 166, 170 [280 P.2d 769].)

In the light of the foregoing rule, it obviously was proper to introduce other forged "referral fee" checks which appellant had deposited in his account during the period in question as well as the records of the sales transactions from which they arose. Such evidence went directly to the question whether appellant knew that the signatures on the checks involved in the first four counts were forged, a fact which he denied, and also to the question whether he had authority to effect the issuance of checks payable to real or fictitious parties who were not entitled to referral fees in order that he might endorse them and obtain the monies to pay salesmen not technically entitled to such fees, a fact also asserted by appellant.

Appellant in his objection to the introduction of such evidence did not indicate that he was surprised or otherwise unable to make his defense. He sought no continuance to investigate the details of these other charges, and, in fact, his defense on the issue of the "referral" checks was based upon

the contention that this was a common occurrence authorized by his employer. Clearly, then, no error was committed in the receipt of this evidence.

Under this same general heading, appellant has argued that it is "possible" that the court might have added the amounts of these transactions in order to compute the requisite amount of $200 as charged in the grand theft count. However, the record reflects that the trial judge, sitting without a jury, was convinced of appellant's guilt of the five transactions spelled out as the basis for the grand theft charge at the preliminary hearing and we cannot indulge in any speculations stemming from a "possibility" or "opportunity" for error.

The instant case is readily distinguishable from *People* v. *Kellin*, 209 Cal.App.2d 574 [25 Cal.Rptr. 925], strongly relied upon by appellant during his oral argument before this court. In the *Kellin* case the evidence presented at the preliminary hearing related only to one specific theft in an amount in excess of $200 and alleged to have been committed on a specified date. At the time of trial, the prosecution was permitted to introduce evidence of three new and additional thefts, each amounting to $200 or more and committed on dates other than that of the theft originally charged. At the close of the prosecution's case, an amendment to the information was permitted which broadened the period during which the theft was alleged to have been committed to include the dates of these new charges.

The jury was then instructed as follows: " 'If the jury finds that the defendant is guilty of embezzlement of any item of $200 or more, it will not be necessary for the jury to determine his guilt or innocence with respect to any other items.' " Clearly, this procedure was improper, for, in effect, the jury was advised that defendant might be convicted upon a charge which was not disclosed at his preliminary hearing, even though they might believe him to be innocent of the single charge upon which he had been committed. Obviously, the procedure followed in the instant case was in no way comparable.

Finally, under this assignment of error, appellant makes passing reference to the fact that the fifth count of the information alleged that he was the employee of Jackson Howell and that the stolen money was the personal property of Jackson Howell, whereas his employer was technically

Howell Chevrolet Company, a corporation, rather than Jackson Howell, an individual. Appellant's decision not to stress this point is understandable, for when he called it to the court's attention at the time of trial in connection with the more general objection above discussed, he specifically indicated that this technical error in the name of his employer in no way surprised him. Section 956 of the Penal Code fully answers this contention: "When an offense involves the commission of, or an attempt to commit a private injury, and is described with sufficient certainty in other respects to identify the act, an erroneous allegation as to the person injured, or intended to be injured, or of the place where the offense was committed, or of the property involved in its commission, is not material." (Cf. *People* v. *Olf*, 195 Cal.App.2d 97, 107 [15 Cal.Rptr. 390].)

The judgment is affirmed. The appeal from the order denying motion for new trial is dismissed.

Fox, P. J. and Ashburn, J., concurred.

A petition for a rehearing was denied April 5, 1963, and appellant's petition for a hearing by the Supreme Court was denied May 8, 1963.