[Crim: No. 12512. First Dist., Div. Two. Dec. 13, 1974.]

THE PEOPLE, Plaintiff and Respondent, v.
JAMES ERVING THOMAS, Defendant and Appellant.

## COUNSEL

David E. Newhouse, under appointment by the Court of Appeal, for Defendant and Appellant.

Evelle J. Younger, Attorney General, Jack R. Winkler, Chief Assistant Attorney General, Edward P. O'Brien, Assistant Attorney General, Gloria F. DeHart and Todd C. Hedin, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

**TAYLOR, P. J.**—Defendant, James Erving Thomas, appeals from a judgment entered following a jury trial convicting him of grand theft in violation of Penal Code section 487, subdivision 3.[1] He challenges his conviction, alleging: 1) he was not advised by the trial court of his privilege against

---

[1] "Grand theft is committed in any of the following cases: . . . "3. When the property taken is an automobile, firearm, horse, mare, gelding, any bovine animal, any caprine animal, mule, jack, jenny, sheep, lamb, hog, sow, boar, gilt, barrow or pig."

self-incrimination; 2) he was denied effective representation by trial counsel; 3) the court improperly refused his proffered instruction to the jury regarding petty theft as a lesser included offense under section 487, subdivision 3; 4) he was denied due process, as the arraigning court set excessive bail; and 5) the unconstitutionality of Penal Code section 487, subdivision 3.

The undisputed facts are as follows: Prior to May 12, 1973, defendant worked as a part-time employee on a dairy ranch in Santa Rosa. On Friday, May 11, 1973, two calves were born on the ranch. The next day they were brought to the barn and placed in a pen for new calves. On Sunday, May 13, while defendant and James McCoy were playing cards at a local bar, defendant offered to sell two calves to McCoy. Defendant and a friend then drove to the dairy, obtained the two new-born calves, and brought them back to the bar for McCoy's inspection. McCoy was gone. Defendant and his friend then took the calves to defendant's mother's home and placed them in a shed for the night. The next morning, he and his friend took the calves to Sebastopol in an unsuccessful attempt to find McCoy. Defendant then returned the calves to his mother's shed, fed them, and left them there again on Monday night.

On Tuesday, the calves were discovered in the shed by two separate parties, both of whom notified the sheriff. Detective Anderson of the Sonoma County Sheriff's Department arrested defendant on July 2. At the time of the arrest, Anderson read defendant his *Miranda* rights, and had him sign a waiver form indicating that he understood his rights but did not wish to exercise them. Anderson then wrote out defendant's statement, which defendant read and signed.

The theory of the defense at the trial was that there was no intent by defendant to permanently deprive the dairy owner of his property. Defendant contended that the proceeds from the sale, if he had accomplished a transaction, would have been returned to the owner of the calves.

Defendant first contends that he was not adequately advised by the trial court of his privilege against self-incrimination. The record indicates that prior to defendant taking the stand, the court advised him of his basic Fifth Amendment right, indicating that: 1) he had a right not to take the stand; 2) he could not be compelled to take the stand; and 3) if he did choose to testify, he would be subject to cross-examination. The court also specifically asked defendant if he was taking the stand of his own free will, and whether he had discussed the consequences of testifying with his attorney. Defendant responded affirmatively.

Defendant now argues that under the rationale of *Boykin* v. *Alabama* (1969) 395 U.S. 238 [23 L.Ed.2d 274, 89 S.Ct. 1709], *In re Tahl,* 1 Cal.3d 122 [81 Cal.Rptr. 577, 460 P.2d 449], and *People* v. *Levey,* 8 Cal.3d 648 [105 Cal.Rptr. 516, 504 P.2d 452], it was incumbent upon the court at the trial to ascertain whether or not he knowingly and voluntarily waived his privilege against self-incrimination before he took the stand.[2]

Defendant urges that the scope of these cases extends to the situation at bar. He cites no precedent for this proposition. Rather, he maintains that since the court knew that his testimony was tantamount to an admission of guilt, it should have ascertained whether the privilege against self-incrimination was knowingly and voluntarily waived.[3]

■ There is no merit to this contention. Where, as here, *"a defendant is represented by counsel, there is no duty on the part of the trial court to offer the accused any advice on his election to testify or not to testify or to explain the ramifications of either choice"* (*State* v. *McKenzie* (1973) 17 Md.App. 563 [303 A.2d 406, 417]; italics added). ■ The privilege against self-incrimination may be waived, and that waiver is generally considered inherent in the defendant's voluntarily taking the witness stand (*People* v. *Stone,* 239 Cal.App.2d 14, 19 [48 Cal.Rptr. 469]; *People* v. *De Georgio,* 185 Cal.App.2d 413, 421 [8 Cal.Rptr. 295]). ■ If the defendant voluntarily takes the stand, he effectively waives the privilege against self-incrimination as to all inquiries proper on cross-examination and is subject to impeachment the same as any other witness (*People* v. *Stone, supra; People* v. *Kadison,* 243 Cal.App.2d 162-167 [52 Cal.Rptr. 114]; *People* v. *Withers,* 73 Cal.App.2d 58, 60 [165 P.2d 945]).

■ The courts recognize the distinction between defendants appearing with counsel and those appearing on their own behalf. "It is axiomatic that a person may waive the privilege against self-incrimination. But any such waiver 'must be informed and intelligent. There can be no waiver if the defendants do not know their rights.' " In permitting petitioners, *"who were without the aid of counsel,* to testify without advising them of their con-

---

[2]Under *Boykin* and *Tahl,* the record must affirmatively establish that a defendant was aware of, and voluntarily waived, his constitutional rights before entering a *plea of guilty.* In *Levey,* the court held that submission upon the transcript of the preliminary hearing is *tantamount to a guilty plea* and, in such instance, there must also be a specific and express showing on the face of the record that the defendant knew of his constitutional rights, and voluntarily waived them.

[3]Defendant falls short of his own argument, since his testimony was neither an admission of guilt nor tantamount to an admission of guilt. Defendant was conducting a full-scale defense upon a plea of not guilty, and his testimony was part of an overall trial strategy attempting to establish the absence of deprivational intent.

stitutional rights, the court violated their privilege against self-incrimination" (italics added; *Killpatrick* v. *Superior Court,* 153 Cal.App.2d 146, 150-151 [314 P.2d 164]; see also, *People* v. *Glaser,* 238 Cal.App.2d 819, 828 [48 Cal.Rptr. 427]; *People* v. *Kramer,* 227 Cal.App.2d 199, 201-202 [38 Cal.Rptr. 487]).[4]

Defendant voluntarily took the stand in order to testify on his own behalf. *He had the benefit of counsel,* and the trial court specifically asked whether he had discussed with counsel the consequences of so doing. Defendant answered affirmatively. Presumably, defense counsel performed his duty as an attorney and adequately informed defendant of his legal rights. We, therefore, find that the trial court not only met, but exceeded, its obligation.

Defendant next asserts that he did not have effective assistance of counsel as required by both the United States and California Constitutions. He contends that his attorney in the action below should have moved to suppress evidence under Penal Code section 1538.5 to exclude the *Miranda* waiver and the signed confession under Evidence Code sections 402, subdivision (b), and 352. Defendant claims that since counsel did not challenge this evidence, he has been denied a crucial defense at both the trial level and the appellate level: at trial, from maintaining that he had nothing to do with the missing animals; on appeal, from challenging the admission of the evidence in question because no challenge was made below.[5]

Preliminarily, we note the well-settled law in this state regarding inadequacy of counsel. ■ To justify relief on this ground, an extreme case must be disclosed. It must appear that counsel's lack of diligence or competence reduced the trial to a farce or a sham. It is counsel's duty to investigate carefully all defenses of fact and of law that may be available to the defendant, and if his failure to do so results in withdrawing a crucial defense from the case, the defendant has not had the assistance to which he is entitled (*People* v. *Najera,* 8 Cal.3d 504, 516 [105 Cal.Rptr. 345, 503 P.2d

---

[4]*People* v. *Barker,* 232 Cal.App.2d 178, at page 182 [42 Cal.Rptr. 651], makes a broad statement indicating that there is a duty imposed on the court to advise a defendant of his privilege against self-incrimination. *Barker* is factually significantly different from the instant case and the cases cited in support of the broad statement both involve defendants without counsel. We conclude that the *Barker* statement was not intended to be as far reaching as it may appear on its face. Cases in other states support the conclusion reached in this opinion (see, e.g., *People* v. *Williams* (1972) 5 Ill.App.3d 56 [282 N.E.2d 503]; *People* v. *Ring* (1967) 89 Ill.App.2d 161 [232 N.E.2d 23], which adds qualification that there must be no indication that counsel failed in his duty to defendant).

[5]Defendant attempts to support his contention by including three signed affidavits in his opening brief. These affidavits were not in evidence before the trial court and were never properly augmented to the record on appeal.

1353]; *People* v. *Hill,* 70 Cal.2d 678, 689 [76 Cal.Rptr. 225, 452 P.2d 329]; *People* v. *McDowell,* 69 Cal.2d 737, 746 [73 Cal.Rptr. 1, 447 P.2d 97]; *People* v. *Ibarra,* 60 Cal.2d 460, 464 [34 Cal.Rptr. 863, 386 P.2d 487]). ▇ Effective counsel, as required by due process, is not errorless counsel (*In re Saunders,* 2 Cal.3d 1033, 1041 [88 Cal.Rptr. 633, 472 P.2d 921]; *People* v. *Brown,* 26 Cal.App.3d 825, 845 [102 Cal.Rptr. 518]). Moreover, counsel's conduct should not be judged by appellate courts in the harsh light of hindsight (*In re Williams,* 1 Cal.3d 168, 176 [81 Cal.Rptr. 784, 460 P.2d 984]) and except in rare cases, an appellate court should not attempt to second-guess trial counsel (*People* v. *Powers,* 256 Cal.App.2d 904, 917 [64 Cal.Rptr. 450]). ▇ When challenging the competency of counsel, the defendant must affirmatively show that the omissions of defense counsel involved a critical issue, and that the omissions *cannot be explained on the basis of any knowledgeable choice of tactics* (*People* v. *Floyd,* 1 Cal.3d 694, 709 [83 Cal.Rptr. 608, 464 P.2d 64]; *People* v. *Fitzgerald,* 29 Cal.App.3d 296, 310 [105 Cal.Rptr. 458]; *People* v. *Brunt,* 24 Cal.App.3d 945, 957 [101 Cal.Rptr. 457]).

Defendant complains that trial counsel did not object to the admission of the *Miranda* waiver and his signed statement. ▇ The indiscriminate use of objections, solely because they are available, aids neither the client nor the cause of justice, and the choice of when to object and when to allow the evidence to come in as offered is inherently a matter of trial tactics not ordinarily reviewable on appeal. The fact that counsel could object, but does not do so for tactical reasons, does not necessarily indicate incompetence (*People* v. *Perry,* 271 Cal.App.2d 84, 114 [76 Cal.Rptr. 725]; *People* v. *Davis,* 270 Cal.App.2d 841, 844 [76 Cal.Rptr. 242]).

▇ The mere fact that trial counsel did not present an alternate or additional defense will not support a reversal of a conviction unless it is shown that the failure was the product of a lack of judgment rather than an error in judgment. Where, from the record, it is a matter of conjecture or surmise whether the failure to present a defense was the product of deliberate judgment or a lack of judgment, denial of the constitutional right to effective counsel or of due process of law has not been shown (*People* v. *Dobson,* 12 Cal.App.3d 1177, 1183 [91 Cal.Rptr. 443]).

▇ In the context of the uncontroverted facts of the present case, defense counsel below presented the only reasonable defense available. Even if the *Miranda* waiver and the signed statement were not admitted into evidence, ample evidence was presented at trial to connect defendant with the missing calves. It was, therefore, entirely reasonable to present the defendant

in the posture of having nothing to hide, and it was equally reasonable to use the waiver and signed statement to support this posture.

In light of the foregoing, it is unnecessary to discuss the substantive merits of the defendant's contentions regarding the admissibility of certain evidence. It is sufficient to say that *even if* the evidence could have been properly excluded upon motion by counsel, in this case the decision not to object was a matter of reasonable trial tactics. Moreover, even if it could be said that this course of action eliminated a "crucial defense" of total non-responsibility for the incident, there is no evidence to indicate that it was due to lack of diligence, competence or knowledge of the law on the part of the trial counsel.

Defendant's third contention is that the trial court erred in denying his request that the jury be instructed as to a lesser included offense of petty theft. ■■■ This contention is clearly without merit.

In *People* v. *Piazza,* 115 Cal.App.2d 811 [252 P.2d 947], the trial court instructed the jury that they might find Piazza guilty of petty theft in the charges of stealing a lamb, one of the animals listed in Penal Code section 487, subdivision 3, defining grand theft. The instruction was given over Piazza's objection, since he felt it was unlikely that the jury would go so far as to convict him of grand theft in the circumstances of the case. The Court of Appeal concluded that the trial court committed reversible error in that the crime of *petty theft was not includable* under charges of violation of Penal Code section 487, subdivision 3 (*People* v. *Piazza, supra,* at p. 815). In *People* v. *Kuhl,* 28 Cal.App.2d 471 [82 P.2d 715], the appellant had been convicted of grand theft for stealing a calf allegedly worth less than $200. Error was claimed, exactly as in the present case, upon the trial court's failure to give an instruction on petty theft as a lesser included offense. The appellate court held that the refusal was proper (*People* v. *Kuhl, supra,* at pp.473-474).

The Legislature in Penal Code section 487 has clearly defined the theft of items such as automobiles, firearms, and certain farm animals as grand theft, regardless of the value of the item taken and the trial court properly refused defendant's instruction on a lesser and included offense (*People* v. *Townsley,* 39 Cal. 405, 406).

Defendant next contends that his $10,000 bail pending trial was excessive. He complains that there is nothing in the record before this court on appeal establishing the factual basis for the bail amount and that this absence from the record "is, by itself, a denial of due process of law in that

it precludes a reasoned inquiry and review of the bail requirements by either the defendant or a reviewing Court as provided under section 1320 of the California Penal Code."

Section 1320 provides for automatic review of the order fixing the amount of bail. However, "[s]uch review shall be held *not later than five days from the time of the original order* fixing the amount of . . . bail" (Pen. Code, § 1320; italics added). ▮▮ Defendant having waived his right for automatic review, the level of bail set by the magistrate below is not a proper matter for inquiry by this court on appeal.

Defendant's final contention is that Penal Code section 487, subdivision 3, is unconstitutional as the classifications in section 487 establishing grand theft in certain circumstances are without rational basis in fact. He was sentenced to the term provided by law for grand theft on the basis of these classifications.[6]

In *People* v. *Townsley* (1870) 39 Cal. 405, 406, the California Supreme Court asserted that it was competent for the Legislature to declare that larceny of specific property designated shall be deemed grand larceny, without regard to the value of the property. Defendant urges that while this case may have had merit in 1870, the rationale for protecting cattle is no longer valid in modern society. However, section 487 has been amended at least a dozen times throughout the years, most recently in 1965. The classifications established therein are apparently considered by the Legislature to have merit in contemporary society.

In *People* v. *Finston,* 214 Cal.App.2d 54 [29 Cal.Rptr. 165], the court was presented with a similar argument regarding the classifications in Penal Code section 487, subdivision 1.[7] The court stated that " '[t]he authority and the duty to ascertain the facts which will justify classified legislation must of necessity rest with the legislature, in the first instance, to whom has been given the power to legislate and not to the courts and the decision of the legislature in that behalf is ordinarily conclusive upon the courts. Every presumption is in favor of the validity of the legislative act and the legislative classification will not therefore be disturbed unless it is palpably

---

[6]The Attorney General asserts that defendant does not have standing to raise this constitutional question because he is not a member of the class of property owners involved in the classification scheme. However, defendant's argument is framed in terms of punishment inflicted on the basis of the classification, and in that sense he is injured or aggrieved by the statute.

[7]The challenge was directed to that portion of section 487, subdivision 1, providing that thefts by servants, agents or employees from their employers in excess of $200 within a 12-month period constitutes grand theft.

arbitrary in its nature and neither founded upon nor supported by reason.' " (*Id.* at p. 57.) As the *Finston* court could not declare the classifications established as grand theft under section 487, subdivision 1, as palpably arbitrary, so too, we find nothing palpably arbitrary with respect to section 487, subdivision 3 (see *People* v. *Andrich,* 135 Cal.App. 274 [26 P.2d 902]).

Defendant objects to the trial court's imposition of a sentence "for the term provided by law," pursuant to Penal Code section 489, a period of not more than one year in the county jail or more than ten years in the state prison. He submits that imposition of punishment upon conviction of theft, whether petty or grand, without due regard to the value of the property taken, violates the basic precepts of due process of the law and amounts to cruel and unusual punishment.

While the punishment provided by the trial court under law might seem harsh to some under the circumstances of the present case, we do not find that "it shocks the conscience and offends fundamental notions of human dignity" (*In re Lynch,* 8 Cal.3d 410, 424 [105 Cal.Rptr. 217, 503 P.2d 921]). Accordingly, we find no merit in defendant's challenge to the constitutionality of section 487, subdivision 3.

The judgment is affirmed.

Kane, J., and Rouse, J., concurred.