[No. F007356. Fifth Dist. Nov. 3, 1987.]

THE PEOPLE, Plaintiff and Appellant, v.
JOHNNYE RAY VARGAS, Defendant and Respondent.

COUNSEL

John K. Van de Kamp, Attorney General, Steve White, Chief Assistant Attorney General, J. Robert Jibson and Gelacio L. Bayani, Deputy Attorneys General, for Plaintiff and Appellant.

Brian C. Davis, under appointment by the Court of Appeal, for Defendant and Respondent.

OPINION

BALLANTYNE, J.—

### INTRODUCTION

Johnnye Ray Vargas was charged with murdering Amanda White (Pen. Code, § 187). During his preliminary examination, defense counsel sought to call the defendant as a witness. Counsel explained that the defendant was reluctant to testify. The judge attempted to take a waiver of the defendant's Fifth Amendment privilege not to testify against himself. Because the defendant was equivocal in his waiver of rights, the magistrate refused to allow the defendant to testify during the preliminary hearing.

The defendant brought a Penal Code section 995 motion challenging the legality of his commitment.[1] The defendant argued that he had been denied the right to present an affirmative defense during the preliminary hearing. The superior court agreed and granted the section 995 motion. The state appeals the superior court's order.

### FACTS

On November 11, 1982, Gabrielle White watched her older sister Amanda leave the family home at about 12 midnight with the defendant. The next morning police officers found Amanda dead on school grounds just down the street from the White home.

Officer Trogdon, of the Modesto Police Department, saw the defendant walking through a parking lot toward an alleyway between 10th and 11th Streets at 3 a.m. on November 12. He stopped the defendant and saw a large

---

[1] All subsequent references to code sections are to the Penal Code.

amount of blood on the defendant's pants from the knees down. The defendant's knuckles were also skinned.

Responding to Officer Trogdon's question concerning the blood on his pants, the defendant explained that he had gotten into a fight with "a couple of guys." The defendant told Officer Trogdon that he did not need any assistance and left.

The next morning Detective Elvin Thomason of the Modesto Police Department discovered Amanda's body. He found a large spot of blood close to the body, and he recovered several other items of physical evidence from the scene including two Band-Aids. The defendant later acknowledged that he had lost two Band-Aids that had been taped on his hands earlier that evening.

A criminalist later analyzed the Band-Aids and defendant's clothing. Blood stains on the defendant's jacket and shoelaces did not match the defendant's blood type but did match Amanda's. The blood type on the Band-Aids recovered at the school matched the defendant's blood type. The court found sufficient cause to hold the defendant to answer charges that he murdered Amanda White. *Additional pertinent facts involved in our analysis of the issue are included in the discussion below.*

On appeal the state contends that it was error for the superior court to grant the defendant's section 995 motion. The state argues that the magistrate properly refused the defendant the opportunity to testify at the preliminary hearing because he refused to waive his rights not to testify and not to incriminate himself. We agree and reverse the judgment.

### DISCUSSION

The magistrate here faced the factual dilemma of deciding whether the defendant actually wanted to testify. Trial counsel wished to call the defendant to the witness stand during the preliminary hearing. Counsel indicated, however, that his client was reluctant to testify only because of "a severe amount of anxiety about testifying." Trial counsel stated that the defendant's anxiety had nothing to do with a fear that the defendant might commit perjury or some other crime. However, he went on to add, *"I don't know whether I have the right to force him to testify as counsel or whether I have to respect his wishes not to put him on the stand.* If somebody knows the answer to that, I would be happy to have some guidance." (Italics added.) This clearly indicated a conflict between counsel and the defendant as to the defendant's reluctance to testify. The magistrate then asked, "Is he reluctant to testify because he does not wish to waive his Fifth Amendment

rights?" Counsel replied, "No, that has nothing to do with it." The magistrate then took a recess and suggested that counsel talk to his client.

After the recess the defendant returned to the witness stand and the following colloquy ensued between the magistrate and the defendant:

"THE COURT: Before you begin, Mr. Perry, because of the statement you made about the Defendant's reluctance to testify before we took the recess, I'm going to ask the Defendant some questions before I permit you to ask him any questions.

"Mr. Vargas, you have a right not to testify. You have a right not to incriminate yourself. You have an absolute right not to testify. Do you understand that right?

"THE WITNESS: I guess.

"THE COURT: You may not be compelled to take the witness stand and testify unless you wish to do so. Do you understand that?

"THE WITNESS: (Affirmative nod.)

"THE COURT: Whatever your reason is for not wanting to testify, you don't have to tell us what that reason is. If you don't want to testify, simply tell us that and you won't be required to testify. Do you understand that?

"THE WITNESS: (Affirmative nod.)

"THE COURT: Do you understand that, Mr. Vargas?

"THE WITNESS: Yes.

"THE COURT: Do you want to testify?

"THE WITNESS: Kind of.

"THE COURT: Kind of?

"THE WITNESS: Yeah.

"THE COURT: Well, do you or don't you?

"THE WITNESS: No, not really.

"THE COURT: You don't really want to testify?

"THE WITNESS: Not really.

"THE COURT: You'd rather not testify?

"THE WITNESS: I don't know.

"THE COURT: If you do testify, Mr. Vargas, you'll be giving up your right not to incriminate yourself. Do you understand that? Do you understand that right, Mr. Vargas?

"THE WITNESS: What was it again?

"THE COURT: You have an absolute right to refuse to testify. If you do testify voluntarily, you'll be giving up your right not to testify. You'll be giving up your right not to incriminate yourself. Do you understand that?

"THE WITNESS: (Affirmative nod.)

"THE COURT: You'll have to answer out loud.

"THE WITNESS: Yes, yes.

"THE COURT: If you do testify anything you say can be used against you. Do you understand that?

"THE WITNESS: Uh-huh (yes).

"THE COURT: And if you do testify, you'll be required to testify truthfully. Do you understand that?

"THE WITNESS: Yes.

"THE COURT: And do you also understand that you'll be subject to cross-examination and the District Attorney will be permitted to ask you questions? Do you understand that?

"THE WITNESS: I guess so, yeah.

"THE COURT: And do you also understand that when the District Attorney asks you questions, you'll also be required to answer those truthfully. Do you understand that, sir?

"THE WITNESS: Yeah.

"THE COURT: Do you want to testify?

"THE WITNESS: No and yes.

"THE COURT: No and yes. Well, that doesn't make a great deal of sense, Mr. Vargas. You either do or you don't. Do you understand the rights that I've explained to you?

"THE WITNESS: I think so.

"THE COURT: Are you willing to give up those rights?

"THE WITNESS: I don't know what to do.

"THE COURT: All right, Mr. Vargas. I'm not going to permit you to testify in this case. It seems to me you have not unconditionally waived your right not to incriminate yourself, and in that light you will not be permitted to testify. Thank you, sir. You may step down."

■ The right of a criminal defendant to testify on his or her own behalf is a fundamental constitutional right. (*Ferguson* v. *Georgia* (1961) 365 U.S. 570, 596 [5 L.Ed.2d 783, 798-799, 81 S.Ct. 756]; *Brooks* v. *Tennessee* (1972) 406 U.S. 605, 612-613 [32 L.Ed.2d 358, 363-364, 92 S.Ct. 1891]; *People* v. *Robles* (1970) 2 Cal.3d 205, 215 [85 Cal.Rptr. 166, 466 P.2d 710].) The criminal defendant is privileged to testify as part of the defense or to refuse to do so. (*Harris* v. *New York* (1971) 401 U.S. 222, 225 [28 L.Ed.2d 1, 4, 91 S.Ct. 643].)

Generally speaking, a defendant waives the Fifth Amendment privilege by voluntarily taking the witness stand. Where the defendant appears in propria persona, the duty of the court in protecting the defendant's privilege against self-incrimnation is greater. (*People* v. *Longwith* (1981) 125 Cal.App.3d 400, 412 [178 Cal.Rptr. 136]; *People* v. *Solomos* (1978) 83 Cal.App.3d 945, 953-954 [148 Cal.Rptr. 248].) However, where a defendant is represented by counsel, the court has no duty to admonish the defendant regarding constitutional rights or to take a formal waiver of those rights. (*People* v. *Thomas* (1974) 43 Cal.App.3d 862, 866-868 [118 Cal.Rptr. 226].)

In *People* v. *Thomas, supra,* the trial court advised the defendant, who was represented by counsel, that he had a right not to take the stand, that he could not be compelled to take the stand, and that he would be subject to cross-examination. The court specifically asked the defendant whether he

had discussed the consequences of testifying with his attorney and whether he took the stand under a free will. The defendant responded affirmatively. Using a *Boykin-Tahl*[2] theory on appeal, Thomas claimed that he was entitled to a full hearing to ascertain whether his waiver of the privilege against self-incrimination was knowing and intelligent. The *Thomas* court rejected this theory, reasoning as follows: "There is no merit to this contention. Where, as here, *'a defendant is represented by counsel, there is no duty on the part of the trial court to offer the accused any advice on his election to testify or not to testify or to explain the ramifications of either choice'* [citation]. The privilege against self-incrimination may be waived, and that waiver is generally considered inherent in the defendant's voluntarily taking the witness stand [citations]. If the defendant voluntarily takes the stand, he effectively waives the privilege against self-incrimination as to all inquiries proper on cross-examination and is subject to impeachment the same as any other witness [citation].

"The courts recognize the distinction between defendants appearing with counsel and those appearing on their own behalf. 'It is axiomatic that a person may waive the privilege against self-incrimination. But any such waiver "must be informed and intelligent. There can be no waiver if the defendants do not know their rights." ' In permitting petitioners, *'who were without the aid of counsel,* to testify without advising them of their constitutional rights, the court violated their privilege against self-incrimination' [citations].

"Defendant voluntarily took the stand in order to testify on his own behalf. *He had the benefit of counsel,* and the trial court specifically asked whether he had discussed with counsel the consequences of so doing. Defendant answered affirmatively. Presumably, defense counsel performed his duty as an attorney and adequately informed defendant of his legal rights. We, therefore, find that the trial court not only met, but exceeded, its obligation." (43 Cal.App.3d at pp. 867-868, fn. omitted.)

 The issue of whether the magistrate in this action exceeded his authority determines the entire issue of whether the commitment was legal. If a defendant represented by counsel automatically waives the self-incrimination privilege by physically and voluntarily taking the stand, then the magistrate overstepped his authority in (1) advising the defendant, and (2) attempting to take an actual waiver from the defendant as a court would be required to do for a defendant in propria persona.

---

[2] The *Boykin-Tahl* admonition and waiver are derived from *Boykin* v. *Alabama* (1969) 395 U.S. 238 [23 L.Ed.2d 274, 89 S.Ct. 1709] and *In re Tahl* (1969) 1 Cal.3d 122 [81 Cal.Rptr. 577, 460 P.2d 449].

■ All criminal defendants have a fundamental constitutional right to present affirmative defenses at preliminary hearings. (*People* v. *Jennings* (1967) 66 Cal.2d 867, 874-876, 880 [59 Cal.Rptr. 440, 428 P.2d 304].) Trial counsel has the right to control trial tactics and strategy and may waive a client's rights to accomplish those ends. (*People* v. *Hill* (1967) 67 Cal.2d 105, 114-115 [60 Cal.Rptr. 234, 429 P.2d 586]; *People* v. *Floyd* (1970) 1 Cal.3d 694, 704 [83 Cal.Rptr. 608, 464 P.2d 64].)

■ The defendant now contends that once he took the stand his self-incrimination privilege was waived and he was denied the fundamental right to present an affirmative defense. The superior court had no alternative but to grant the section 995 motion because legal commitment was unfair under the *Jennings* case.

The state argues that the magistrate had no option but to admonish the defendant and take the waiver of the privilege against self-incrimination. The authorities cited by the Attorney General, however, are cases in which the defendant appeared in propria persona without the assistance of counsel.

The magistrate here faced a peculiar situation. The defendant's counsel stated that he wanted to call the defendant to the stand. Counsel also indicated, however, that the defendant was reluctant to testify. Defense counsel then explained that the defendant's fear of testifying was not legal or tactical but personal. He was seeking guidance as to whether he could *force* the defendant to testify. This clearly indicated a conflict between defense counsel and the defendant. The magistrate called a recess to permit further consultation between counsel and the defendant. When the defendant did take the stand, the magistrate admonished him. The magistrate told the defendant he had a right not to testify and not to incriminate himself. The magistrate also told the defendant that he had a right not to take the stand. When the magistrate asked the defendant whether he wanted to take the stand and testify, the defendant equivocated.

Instead of responding to the question affirmatively or negatively, the defendant replied with three inconsistent responses: (1) "Kind of." (2) "No, not really" and (3) "I don't know." The magistrate continued the admonishment by asking the defendant whether he understood his rights. The defendant said he did understand. When asked a second time whether he wished to testify, the defendant replied, "No and yes." At this point the magistrate found the defendant failed to waive his privilege against self-incrimination and refused to allow defense counsel to question the defendant.

The magistrate here confronted the legal question of whether the defendant had taken the stand voluntarily. The defendant exhibited a basic understanding of his legal rights after being admonished by the magistrate. The magistrate had even taken a recess for defense counsel to consult with the defendant concerning his rights within the context of defense strategy. The magistrate then found himself confronting a conflict between the defendant and counsel over whether the defendant should testify at his preliminary hearing.

The magistrate here correctly chose to admonish the defendant and to take a waiver of the defendant's right to testify at the preliminary hearing. ▮▮▮ The right to testify and the right against self-incrimination are fundamental constitutional rights personal to the defendant. They cannot be waived by counsel without the defendant's consent. (*In re Mosley* (1970) 1 Cal.3d 913, 924 [83 Cal.Rptr. 809, 464 P.2d 473].)

▮▮▮ The magistrate had an affirmative duty to admonish the defendant and to take a waiver where defense counsel and the defendant each set forth their conflict on the record.

This holding does not conflict with *People* v. *Thomas, supra,* 43 Cal.App.3d 862. The *Thomas* court found a presumption of waiver of the right against self-incrimination where a defendant represented by counsel voluntarily took the stand and testified without protest. That presumption is, of course, rebuttable. ▮▮▮ The presumption that the defendant voluntarily waives his right not to testify and his right against self-incrimination when he voluntarily takes the stand is rebutted when defense counsel and the defendant both indicate the defendant's reluctance to testify. Under these circumstances, the presumption is reversed. It must be presumed that the defendant is not taking the stand voluntarily.

The *Thomas* decision is well reasoned. Its holding covers the vast majority of cases in which defense counsel calls a defendant to the stand and the defendant takes the stand without indicating any hesitation. Where the court is made aware there is a conflict between defense counsel and the defendant, however, the magistrate has a duty to admonish the defendant and to take a waiver of the defendant's right not to testify and the defendant's right against self-incrimination before allowing defense counsel to proceed with direct examination of the defendant.

▮▮▮ Had the magistrate permitted direct examination of the defendant without a clear and unambiguous waiver of the right not to testify and the right against self-incrimination, the defendant's testimony would be subject to attack at some later stage of the action. The defendant here was unsure

whether he wanted to testify and whether he wanted to relinquish his right against self-incrimination. ██ ██ ██ ██ ██ Because the defendant apparently understood his rights, the magistrate could only surmise that the defendant was not voluntarily testifying and that he was not waiving his right against self-incrimination.[3] Absent a clear waiver of the right not to testify and the right against self-incrimination, the magistrate correctly balanced the defendant's rights not to take the stand, not to testify, and not to incriminate himself over his right to an affirmative defense at the preliminary hearing. This is especially true where, as here, the defendant does not show any desire to testify. It was defense counsel, not the defendant, who wanted to present an affirmative defense. Defense counsel could not waive the defendant's rights not to testify and not to incriminate himself.

Without an admonition and waiver of the defendant's right not to testify and his right against self-incrimination, there is no certainty as to whether this defendant took the stand voluntarily. The admonition and waiver procedure used by the magistrate here has the added value of clarifying the record. The superior court incorrectly granted the defendant's section 995 motion. The superior court's order granting the defendant's section 995 motion is reversed. This case can proceed to trial based on the magistrate's finding that there was sufficient evidence to hold the defendant over for trial.

Woolpert, Acting P. J., and Stone, J.,* concurred.

---

[3] The magistrate could also conclude that the defendant could not understand the nature of the proceedings against him or his fundamental rights as a criminal defendant. When reaching this conclusion, the magistrate or trial court has the duty to proceed under section 1368 to evaluate the defendant's competency to stand trial. Here there is insufficient evidence in the record to suggest that the defendant was incompetent to proceed with his preliminary hearing or his trial. Evidence that merely raises a suspicion that the defendant is insane or incompetent that does not disclose a present inability to participate rationally in a proceeding is not deemed "substantial" evidence necessitating a competency hearing. (*People* v. *Deere* (1985) 41 Cal.3d 353, 358 [222 Cal.Rptr. 13, 710 P.2d 925].)

* Assigned by the Chairperson of the Judicial Council.