Filed 8/8/16  P. v. Sage CA3

NOT TO BE PUBLISHED

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Shasta)

----

| | |
|---|---|
| THE PEOPLE, | C080612 |
| Plaintiff and Respondent, | (Super. Ct. No. 15F2803) |
| v. | |
| CHRISTOPHER JEFFREY SAGE, | |
| Defendant and Appellant. | |

Appointed counsel for defendant Christopher Jeffrey Sage has asked this court to review the record to determine whether there are any arguable issues on appeal.  (*People v. Wende* (1979) 25 Cal.3d 436.)  Defendant also filed a supplemental brief.  Based on our review of the record and defendant's supplemental brief, we find no arguable error that would result in a disposition more favorable to defendant and will affirm the judgment.

1

FACTS AND PROCEEDINGS

We provide the following brief description of the facts and procedural history of the case. (See *People v. Kelly* (2006) 40 Cal.4th 106, 110, 124.)

Defendant approached victim Landon Kucharski, a postal worker, and accused him of pouring rat poison into defendant's bottle of whiskey. Kucharski said, "I don't know who you are," turned away and went to deliver the mail. When he returned to his truck, defendant was sitting in the driver's seat. Defendant asked Kucharski why he put rat poison in his whiskey and challenged Kucharski to fight him or call the police. Kucharski retrieved his cell phone from the passenger side of the truck, then walked across the street and called 911. After sitting in the truck for approximately 15 minutes, defendant took a water bottle out of Kucharski's lunch bag, got out of the truck, held the bottle up, and said he was going to take it. Defendant returned to the truck, sat back down in the driver's seat, and retrieved a sandwich from Kucharski's lunch bag. He eventually got out of the truck and, as he walked away, held the sandwich up in the air. Kucharski did not confront defendant because he was afraid of defendant and thought he was under the influence of drugs.

Lori Johnson, an employee at one of the nearby offices, called 911 after she saw Kucharski standing in the flowerbed outside her office and defendant sitting in the mail truck "going through things." At one point, defendant got out of the truck and walked across the street towards where she and Kucharski were standing. Defendant was "very agitated, very argumentative," and was babbling and using profanity. Johnson told him to "stay away." Defendant kept approaching her with a bottle of whiskey in one hand and Kucharski's water bottle in the other, rambling and swearing. Concerned for her safety, Johnson told defendant the police were coming and he needed to go away.

Jeffrey Devish, another employee, went outside to assist Johnson. Devish saw defendant and yelled, "Hey, are you taking stuff out of the mail truck?" Defendant

2

yelled, "Fuck yes," and walked toward Devish, who yelled back, "Hey, you can't take stuff out of there. You've got to--you know, did you take anything else?" Defendant said, "Fuck, yes," and then ran off into the bushes.

Police Officers Eric Little and Christopher Hunt arrived and tracked down defendant, who was still holding the bottle of whiskey, waving his hands around and mumbling. Defendant refused the officers' instructions to sit down, and resisted when the officers grabbed his arms. Officer Little was able to handcuff one of defendant's wrists but not the other. When defendant refused numerous commands to put his hands behind his back, Officer Little pepper sprayed him twice in the face. However, defendant continued to resist their efforts to handcuff him. Believing defendant was under the influence of drugs or alcohol, both officers struck defendant with their batons until they were able to handcuff him. Once defendant was handcuffed and laying face down on the ground, he continued to kick his legs and flail around. Officer Little searched defendant and found a concealed knife that appeared to have been made from a pair of scissors.

Kucharski's manager, Jeffrey Clark, arrived on scene and observed defendant resisting officers' attempts to detain him. He saw the officers use pepper spray and striking defendant with batons in attempting to subdue him, and ask him numerous times to "stop resisting" and "get on the ground" as defendant refused and continued to struggle, even after being taken to the ground.

Several other officers arrived and assisted Officers Little and Hunt in picking defendant up and placing him in the patrol car. Once in the patrol car, defendant began "moving about, very violently," fighting, kicking, and spitting, requiring the officers to remove him and place a spit hood and leg restraints on him. Defendant tried to bite and spit on the officers as they attempted to secure the hood and restraints. Once secured, defendant was placed back into the patrol car and transported to the hospital, where defendant continued to yell, scream, and thrash around.

Defendant was charged by second amended information with second degree robbery (Pen. Code, § 211--count 1; unless otherwise set forth, statutory references that follow are to the Penal Code), obstructing or resisting an officer (§ 69--count 2), carrying a dirk or dagger (§ 21310--count 3), and battery on an officer and emergency personnel (§ 243, subd. (b)--count 4). The amended information alleged defendant suffered a prior prison term. (§ 667.5, subd. (b).)

Defendant was tried by jury and convicted as charged. In a bifurcated proceeding, the trial court found true the prior prison term allegation.

The trial court denied probation and sentenced defendant to the middle term of three years on count 1, plus two consecutive eight-month terms (one-third the middle term) on counts 2 and 3, plus one consecutive year for the prior prison term, for an aggregate term of five years four months in state prison. We note the court's September 30, 2015, minute order erroneously states an aggregate sentence of five years eight months. The court awarded defendant 154 days of presentence custody credit (134 actual days plus 20 conduct credits).

The court imposed fees and fines as recommended in the probation report, as follows: a $4,500 restitution fine (§ 1202.4) and a $4,500 parole revocation restitution fine, stayed pending successful completion of parole (§ 1202.45); a $160 court operations assessment (§ 1465.8); a $120 criminal conviction assessment (Gov. Code, § 70373); and a crime prevention fine of $39, comprised as follows: $10 (§ 1202.5), $10 (Pen. Code, § 1464), $1 (Gov. Code, § 76104.6), $4 (Gov. Code, § 76104.7), $5 (Gov. Code, § 70372, subd. (a)(1)), $7 (Gov. Code, § 76000, subd. (a)(1)), and $2 (§ 1465.7). The court reserved jurisdiction on the issue of victim restitution.

Defendant filed a timely notice of appeal.

DISCUSSION

*Issues Raised by Defendant's Supplemental Brief*

Counsel filed an opening brief that sets forth the facts of the case and requests that we review the record and determine whether there are any arguable issues on appeal. (*People v. Wende, supra,* 25 Cal.3d 436.) Defendant was advised by counsel of the right to file a supplemental brief within 30 days of the date of filing of the opening brief.

Defendant filed a supplemental brief arguing his trial counsel was ineffective for failing to have a sufficient number of meetings with him; failing to consult with him on trial tactics; failing to investigate the case to find potential witnesses or obtain "video footage several people recorded [and] sent to Channel 7 News" showing the use of excessive force by the arresting officers; failing to file any pretrial motions or discuss issues with the district attorney; being unprepared and uncomfortable during trial and failing to ask the witnesses enough questions; making a motion to dismiss for insufficient evidence which, "based on the evidence against me at that point . . . seemed pretty far[-]fetched" and was denied; and advising him against and discouraging him from testifying at trial.

As we explain, none of defendant's claims, to the extent we can decipher them, has merit. As for those claims which refer to matters that are not part of the record on appeal, we decline to consider them. (*People v. Jenkins* (2000) 22 Cal.4th 900, 952; accord *People v. Szeto* (1981) 29 Cal.3d 20, 35; Cal. Rules of Court, rule 8.204(a)(2)(C).) The same is true for claims made in passing and without factual or legal analysis. (Cal. Rules of Court, rule 8.204(a)(1)(B); *Atchley v. City of Fresno* (1984) 151 Cal.App.3d 635, 647.)

Defendant has the burden of proving a claim of ineffective assistance of counsel. (*People v. Ledesma* (1987) 43 Cal.3d 171, 215-218.) To meet this burden, he must prove (1) counsel's representation was deficient, i.e., it fell below an objective standard of

reasonableness under prevailing professional norms, and (2) counsel's deficient representation subjected the defense to prejudice, i.e., there is a reasonable probability that but for counsel's failings, the result would have been more favorable. (*Strickland v. Washington* (1984) 466 U.S. 668, 687-688, 694 [80 L.Ed.2d 674, 693, 698]; *People v. Bell* (1989) 49 Cal.3d 502, 546.) On a silent record, a claim of ineffective assistance is more appropriately made in a habeas corpus proceeding than on appeal. (*People v. Wilson* (1992) 3 Cal.4th 926, 936.) We conclude defendant has failed to show deficient performance and/or prejudice.

Defendant takes issue with defense counsel's tactics both before and during trial. Where, as here, the record fails to show why counsel acted or failed to act as he did, and counsel was not asked to provide an explanation, the contention fails unless there could be no satisfactory explanation. (*People v. Mendoza Tello* (1997) 15 Cal.4th 264, 266-268.) Defendant's claim that defense counsel did not meet with him enough implicitly concedes that counsel did in fact meet with him. It is certainly possible counsel felt he met with defendant a sufficient number of times to prepare his case and, because defendant is not a legal expert, did not feel compelled to consult with defendant as to trial tactics and strategy. With respect to finding and questioning potential witnesses, defense counsel cross-examined each of the law enforcement officers who testified, as well as witnesses Johnson, Devish, and Clark, and victim Kucharski, all of whom provided similar accounts of defendant's misconduct involving Kucharski and the mail truck and his subsequent violent attempts to avoid detention and arrest. We decline to consider defendant's claim of "video footage" showing excessive force by the arresting officers, as it refers to matters not part of the appellate record. (*People v. Jenkins, supra,* 22 Cal.4th at p. 952.)

Defendant claims his attorney's preparedness for trial, manner of questioning witnesses and lodging objections, and decisions regarding the making of motions on defendant's behalf, all demonstrate counsel's incompetence. The claim fails. "The

failure to impeach a witness or to object to evidence are matters which usually involve tactical decisions on counsel's part and seldom establish a counsel's incompetence.  As we recently observed, 'Matters involving trial tactics are matters "as to which we will not ordinarily exercise judicial hindsight . . . ."  [Citation.]  . . .  "In the heat of a trial, defendant's counsel is best able to determine proper tactics in the light of the jury's apparent reaction to the proceedings.  Except in rare cases an appellate court should not attempt to second-guess trial counsel . . . ."  [Citations.] . . . "The choice of when to object or not is inherently a matter of trial tactics not ordinarily reviewable on appeal; failure to object does not necessarily indicate incompetence. . . ." ' (*People v. Najera* (1972) 8 Cal.3d 504, 516-517; see also *People v. Pope* (1979) 23 Cal.3d 412, 424; *People v. Jenkins* (1975) 13 Cal.3d 749, 754-755; *People v. Beagle* (1972) 6 Cal.3d 441, 458; *People v. Floyd* (1970) 1 Cal.3d 694, 709; *People v. Thomas* (1974) 43 Cal.App.3d 862, 868-869.)" (*People v. Frierson* (1979) 25 Cal.3d 142, 158.)

Finally, defendant claims his attorney was prejudicially ineffective in advising him against and discouraging him from testifying at trial.  The record belies the claim.  During trial, outside the presence of the jury, the court engaged in the following colloquy with defendant and his attorney:

"[DEFENSE COUNSEL]:  I have had discussions with my client about his right to testify and he has determined not to testify. . . .

"[THE COURT]:  Only a couple of questions.  And that is, sir, have you had an adequate chance to talk with your attorney about this issue?

"[DEFENDANT]:  Yes.

"[THE COURT]:  And do you understand that you have both a Constitutional right to get up here and testify if you wish and a Constitutional right not to testify, if that is what you wish.  [¶]  Do you understand those two choices?

"[DEFENDANT]:  Yes.

7

"[THE COURT]:  You talked to him.  Have you had enough time to talk to him?  Do you need any more time?

"[DEFENDANT]:  No.

"[THE COURT]:  And you've had a chance to talk about the case and what would happen maybe if you did take the stand?

"[DEFENDANT]:  Yeah.

"[THE COURT]:  I have no idea what those conversations are, but sometimes--I don't know what your history is.  Perhaps there are priors that you just as soon didn't come out.  There might be lots of reasons and I'm not going to get into that with you.  I just want to make sure that you're comfortable that you know what you are doing right now.  [¶]  Do you?

"[DEFENDANT]:  Yes.

"[THE COURT]:  All right.  And do you now--is it your statement that you give up your right to testify and choose to remain silent in this trial?

"[DEFENDANT]:  Yes.

"[THE COURT]:  Counsel, do you represent that the defendant understands the nature of what he's just said and the consequences?

"[DEFENSE COUNSEL]:  Yes.

"[THE COURT]:  Very good.  Counsel for the People or the Defense, do you believe there is anything further that needs to be put on the record?

"[DEFENSE COUNSEL]:  No.

"[PROSECUTION]:  Your Honor, the only thing I've heard in this context is that the defendant knows that it is his decision whether to testify or not and he can be advised by counsel, but ultimately it's his decision.

"[THE COURT]:  I believe that is what my question was to you, sir, but I'll state it again.  After all the conversation with your attorney, do you give up your right to testify in this trial and elect to take your right to remain silent?

8

"[DEFENDANT]: Yes."

Even assuming defense counsel advised defendant not to testify, defendant was given ample opportunity to exercise his right to testify, or to express his concerns in that regard to the court. He elected not to. Accordingly, defendant has not established his trial counsel was ineffective.

Having undertaken an examination of the entire record, we find no arguable error that would result in a disposition more favorable to defendant.

## DISPOSITION

The judgment is affirmed.


       HULL       , Acting P. J.


We concur:


    ROBIE    , J.


    MURRAY    , J.

9