120 Cal.Rptr.2d 266 (2002)
98 Cal.App.4th 958
In re Del B. DALTON on Habeas Corpus.
No. G029550.
Court of Appeal, Fourth District, Division Three.
May 29, 2002.
Review Denied September 18, 2002.[*]
*268 E. Nicholas Hansen for Petitioner.
Tony Rackauckas, District Attorney, and Scott G. Scoville, Deputy District Attorney, for Respondent.

*267 OPINION
RYLAARSDAM, Acting P.J.
We grant a petition for writ of habeas corpus filed after the appellate division affirmed the jury's conviction of petitioner Del B. Dalton (defendant), a physician, of six misdemeanors: three counts of sexual battery, one count of battery, and two counts of misrepresenting his certification in a medical specialty. The trial court violated defendant's constitutional right not to testify against himself, which violation may have affected the findings of guilt. No material facts relating to the issues are in dispute. (In re Eichorn (1998) 69 Cal.App.4th 382, 387-388, fn. 3, 81 Cal.Rptr.2d 535.) Although there were other substantial irregularities which add to our determination that the violations of *269 defendant's Fifth Amendment right were not harmless beyond a reasonable doubt, the court's initiation of defendant's testimony in the presence of the jury alone is sufficient to compel us to grant the petition and order a new trial.

FACTUAL AND PROCEDURAL BACKGROUND
We need not provide a detailed recitation of the facts underlying the charged crimes in order to address the dispositive issue. The convictions are based on complaints from women who claim that while undergoing medical treatment in defendant's office, defendant either unreasonably exposed them or touched them in a sexual manner.
At trial, defendant asserted that if the victims' accusations were true, his alleged misconduct would easily have been overheard by other people because there was no sound insulation in the medical suite. In support of this defense, defendant filed a motion requesting a visit to his medical offices. He maintained the site visit would help demonstrate the physical layout of the small office, its light construction and lack of sound insulation, the ease of sound transmission, and the extraordinary openness of sight. The motion did not suggest a procedure for the visit, or who, if anyone, would conduct a tour. Nor did the motion indicate testimony would be necessary to make the described observations.
The court granted the motion and, after eight days of testimony, convened at defendant's office. In the presence of the jury and the prosecutors, the court asked one of defendant's lawyers, "So do you want me to swear Dr. Dalton for the purposes of carrying out a guided tour?" The lawyer acceded to the request. At that time defendant was in his personal office. The court thereupon summoned him to the room where the others were gathered. The court did not ask defendant whether he waived his Fifth Amendment rights. The court's only statement to him was: "Dr. Dalton, where are you? Hi, come on out. [¶] ... Liz, would you swear him. Raise your right hand."
Immediately following this exchange, the court instructed defendant to provide the group with a tour of the office. After defendant, in narrative style, described the lobby area and the procedures used when patients entered the office, the court interjected, again in the presence of the jury: "I think I can do the questioning, be easier." The judge then asked defendant about noises made by office equipment, presumably to counter defendant's contention that office personnel would overhear any improprieties in the examining room, and about where Demerol was stored, apparently in connection with prior testimony about drug use.
After concluding its questioning, without any attempt to obtain the consent of defendant or his lawyer, and again in the presence of the jury, the court invited the prosecutor to cross-examine defendant. The district attorney did so, focusing on physical changes in the office made after the victims had been there, including rearrangement of furniture and installation of curtains and locks. As had the judge, the prosecutor also asked about the location of drugs in the office. At least part of this examination took place in the absence of defendant's lawyer because during its course the court asked, "Mr. Burge, where are you?"
The court then again questioned defendant concerning the storage of drugs and also about construction materials, i.e., if the walls were insulated and whether single or double wallboard was used. The court asked why the examination rooms were equipped with locks. When defendant *270 responded that the presence of laser equipment made this necessary, the court engaged in a six-page cross-examination about the equipment. The prosecutor followed these inquiries with further cross-examination on the same subjects.
Upon completion of cross-examination, judge, jury, lawyers, and defendant returned to the courtroom. Before the prosecution had rested, and without any indication of a further discussion with defendant's lawyers, the court committed defendant to additional testimony by stating to the jurors, "[I]f you have any other questions about the doctor ... regarding his office or any other question related to that, you'll be able to ask that later when he takes the stand at a later time."

DISCUSSION

The Trial Court's Conduct Necessitates a New Trial
The privilege against self-incrimination is guaranteed by both the federal and state constitutions (U.S. Const., 5th Amend. & Cal. Const., art. I, § 15 [as codified in Evid.Code, § 930]) and provides that a defendant in a criminal matter "has an absolute right not to be called as a witness and not to testify. [Citations.]" (Cramer v. Tyars (1979) 23 Cal.3d 131, 137, 151 Cal.Rptr. 653, 588 P.2d 793; People v. Merfeld (1997) 57 Cal.App.4th 1440, 1443, 67 Cal.Rptr.2d 759.) It is error to comment on a defendant's failure to testify. (Griffin v. California (1965) 380 U.S. 609, 85 S.Ct. 1229, 14 L.Ed.2d 106; Evid. Code, § 913, subd. (a).)
But so-called Griffin error is not limited to express comments on a defendant's failure to testify. A mere suggestion that the jury may view a defendant's silence as evidence of guilt is sufficient. (United States v. Robinson (1988) 485 U.S. 25, 32, 108 S.Ct. 864, 99 L.Ed.2d 23.) People v. Medina (1995) 11 Cal.4th 694, 755, 47 Cal.Rptr.2d 165, 906 P.2d 2 noted that "comments, either directly or indirectly, upon defendant's failure to testify in his defense" constitute Griffin error. And in People v. Guzman (2000) 80 Cal.App.4th 1282, 1289-1290, 96 Cal.Rptr.2d 87, we recently concluded that undue emphasis on the willingness of a prosecution witness to testify constituted an implied comment on the defendant's failure to testify. Likewise, when a defendant has made clear an intent not to testify, it is improper for the court to "put [him or her] on the stand to claim the Fifth Amendment in the presence of the jury...." (People v. Lopez (1999) 71 Cal.App.4th 1550, 1554, 84 Cal. Rptr.2d 655; see also People v. Mincey (1992) 2 Cal.4th 408, 440-442, 6 Cal. Rptr.2d 822, 827 P.2d 388.)
It is equally repugnant to the protections afforded by the Fifth Amendment to require a defendant to state, in the jury's presence, whether he or she plans to testify. Public inquiry into those intentions places the defendant in a quandary: refuse to do so and permit the jury to draw adverse consequences or consent and relinquish a constitutional right. (See State v. Gray (Mo.Ct.App.1973) 503 S.W.2d 457, 462 [judge's question to defendant in jury's presence about his intent to testify focused attention on fact defendant was not going to testify and "trangressed ... defendant's constitutional right against self-incrimination"].)
"The right to testify and the right against self-incrimination are fundamental constitutional rights...." (People v. Vargas (1987) 195 Cal.App.3d 1385, 1394, 241 Cal.Rptr. 360.) The denial of either federal constitutional right is reviewed under Chapman v. California (1967) 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 to determine whether the error was harmless beyond a reasonable doubt in the light of all the *271 other evidence presented at trial. (Arizona v. Fulminante (1991) 499 U.S. 279, 309-311, 111 S.Ct. 1246, 113 L.Ed.2d 302.)
Cases we found involving the Fifth Amendment and which explain or adopt the "harmless beyond a reasonable doubt" rule all involve the admission of involuntary confessions. However, a judge's unexpected and direct request in the presence of the jury for a defendant to testify is at least as egregious as admitting an involuntary confession. We question whether it could ever be harmless "beyond a reasonable doubt."
Further, although not necessary for our decision to grant the petition, we are compelled to note other questionable conduct in which the court engaged at trial. We need not iterate all of the other irregularities. They were set out in the petition and reinforced by evidence not properly part of the record in the appellate division, but which we may properly consider on this petition for writ of habeas corpus. (See People v. Coddington (2000) 23 Cal.4th 529, 652, 97 Cal.Rptr.2d 528, 2 P.3d 1081, overruled on another ground in Price v. Superior Court (2001) 25 Cal.4th 1046, 1069, fn. 13, 108 Cal.Rptr.2d 409, 25 P.3d 618.) A representative sample more than suffices to underscore the errors.
First, even if defendant had intended to testify later in the trial after the prosecution rested, there is no indication he was prepared for questions by the court or the prosecutor at his office. The request that he be sworn and testify took the defendant by surprise; he was not even present in the room when the court decided he should act as a tour guide. Nor did his lawyer's consent cover any testimony beyond defendant's description of the premises; it did not extend to the cross-examinations conducted by the court and by the prosecutor on the court's invitation.
Further, the court's inquiry concerning the storage of drugs added strength to the irrelevant testimony elicited from other witnesses about drug use by defendant's witnesses. Although judges may examine witnesses, they must be careful not to become advocates for either side. (People v. Rigney (1961) 55 Cal.2d 236, 241, 10 Cal.Rptr. 625, 359 P.2d 23; see also Lois R. v. Superior Court (1971) 19 Cal.App.3d 895, 902-903, 97 Cal.Rptr. 158.)
Judge Thomas N. Thrasher, the dissenting member of the appellate division panel which affirmed the judgment, correctly noted: "[A] substantial portion of the testimony at trial related to drug usage, particularly by defense witnesses, and this evidence was irrelevant to the offenses charged.... [¶] A review of the entire record indicates that these errors resulted in a miscarriage of justice, ... [and] the repeated introduction of evidence on other extraneous subjects contributed to the likelihood of juror confusionappellant was portrayed as a `pain doctor' who liberally dispensed generous allowances of potentially addictive drugs, advocated the medical use of an illegal narcotic, facilitated voyeurism in his own office, and generally undermined the standard of care in the medical community."
We agree with Judge Thrasher's apt conclusion that the court's improper request for defendant to testify, exacerbated by "other questionable procedures," "resulted in a miscarriage of justice." Thus, we cannot conclude the error here was harmless beyond a reasonable doubt.

Defendant's Constitutional Rights Were Not Waived

Pre-Trial Statements by Defendant's Lawyers
The prosecution argues the court did not violate defendant's constitutional *272 rights when it called him as a witness because, at pretrial conferences, defendant's lawyers had stated he intended to testify. In support of this contention, the district attorney relies on a document entitled "Addition to Settled Statement by the People," which it appears the prosecutor prepared to support a request to the appellate division to augment the record. There is no indication in the record that the trial court signed or adopted it or that the appellate division made an order granting the request. According to the statement, before trial, defendant's lawyers stated that he would testify. And, although the record is questionable, we will assume this to be the fact. Nevertheless, such a recital did not constitute a waiver of defendant's Fifth Amendment's rights.
An early announcement that defendant will testify does not create an irrevocable duty to do so; defendant may later change his mind. The posture of the case, whether evidence is admitted or not, and trial tactics may alter the decision. A pretrial statement such as the one defendant's lawyers made cannot be, in and of itself, a waiver of the right not to testify. In Brooks v. Tennessee (1972) 406 U.S. 605, 92 S.Ct. 1891, 32 L.Ed.2d 358, the United States Supreme Court quoted Bell v. State (1889) 66 Miss. 192, 5 So. 389 with approval: defendant may not be compelled to decide whether to testify or not "`until upon a full survey of all the case, as developed by the state, and met by witnesses on his own behalf[,][h]e may intelligently weigh the advantages and disadvantages of his situation, and, thus advised, determine how to act.'" (Brooks v. Tennessee, supra, 406 U.S. at p. 608, 92 S.Ct. 1891.) Bell characterized a court's attempts to control the timing of the decision whether or not to testify as "coercion." (See Bell v. State, supra, 5 So. at p. 389; Brooks v. Tennessee, supra, 406 U.S. at p. 608, 92 S.Ct. 1891.)
Moreover, the record shows the court understood no final decision had been made. Two days before the site visit, in a discussion relating to the introduction of an audio tape, the prosecutor asked the court, "[w]hat if [defendant] doesn't testify?" The court replied, "[i]f he doesn't testify, you're out of luck."

Consent By Defendant's Lawyers
Alternatively, the district attorney argues that defendant's agreement to conduct the tour of his office and his lawyer's consent to his doing so constituted a waiver of defendant's rights. We disagree. We recognize that where a defendant is represented by a lawyer, the court has no duty to admonish the defendant regarding the privilege against selfincrimination or to take a formal waiver of that right. (People v. Thomas (1974) 43 Cal.App.3d 862, 866-868, 118 Cal.Rptr. 226.) When a defendant is invited by his lawyer to take the stand and does so, the court may safely assume that the lawyer has adequately advised the client of the right not to testify. (Id, at p. 868, 118 Cal.Rptr. 226.)
But here defendant did not take the stand at the request of his lawyer; the invitation came from the court. The lawyer's consent, acquired in the presence of the jury, cannot constitute a waiver. Had defendant's lawyer denied permission for his client to "conduct the tour of the office," the jury would likely have drawn improper inferences from such an exchange. And even disregarding the creation of this dilemma, a lawyer's consent to the court's request to have his client testify does not provide assurance that the client has been made aware of his options under the Fifth Amendment. That is particularly true where, as here, the client *273 was not even present when the purported waiver took place. Moreover, as noted by Judge Thrasher, "[defendant's] impromptu testimony ... during the ... site visit was so egregiously improper and prejudicial as to warrant reversal notwithstanding defense counsel's failure to object."
The right to testify and the right against self-incrimination are fundamental constitutional rights personal to defendant. Any waiver of those rights must be made by defendant himself; his lawyers cannot waive these rights without his consent. (In re Mosley (1970) 1 Cal.3d 913, 924, 83 Cal.Rptr. 809, 464 P.2d 473.) While tactical decisions at trial are generally the lawyers' responsibility, "the decision whether to testify, a question of fundamental importance, is made by the defendant after consultation with counsel. [Citations.]" (People v. Hines (1997) 15 Cal.4th 997, 1032, 64 Cal.Rptr.2d 594, 938 P.2d 388.) Defendant's testimony here resulted from neither a voluntary nor a personal waiver.
Additionally, even if we construed defendant's lawyer's agreement that his client conduct a tour of the office as a waiver of any objection to defendant describing certain features of the physical layout, it did not encompass the subsequent questioning of defendant by the judge, the juror, and the prosecutor on matters only indirectly related to the observations made during the site visit.

The Issues Were Properly Preserved
We disagree with the prosecutor's contention that the petition should be denied because defendant did not present all of the issues contained in this petition to the superior court. We take judicial notice of superior court case number M-9225 and the order filed on April 4, 2001 denying defendant's petition for writ of habeas corpus and rejecting his contention that the trial court violated his constitutional right not to be compelled to testified.
The district attorney also urges us to summarily deny the petition because, as a general rule, a petitioner may not reargue the same issues raised and rejected on appeal. (In re Horns (1993) 5 Cal.4th 813, 825, 21 Cal.Rptr.2d 373, 855 P.2d 391.) But the prosecution concedes that an exception to this rule provides for review where there is clear and fundamental constitutional error, which we find to be present here. (Id. at p. 834, 21 Cal.Rptr.2d 373, 855 P.2d 391.)

DISPOSITION
The petition for writ of habeas corpus is granted, and the cause is remanded to the superior court with directions to set aside the judgment of conviction and to grant defendant a new trial on all issues.
WE CONCUR: BEDSWORTH and O'LEARY, JJ.
NOTES
[*] In denying review, the Supreme Court ordered that the opinion be not officially published. (See California Rules of CourtRules 976 and 977).