[No. G024131. Fourth Dist., Div. Three. Apr. 27, 2000.]

THE PEOPLE, Plaintiff and Respondent, v.
ROGER REGINALD GUZMAN, Defendant and Appellant.

1284

## COUNSEL

Edward A. Hoffman, under appointment by the Court of Appeal, for Defendant and Appellant.

Bill Lockyer, Attorney General, David P. Druliner, Chief Assistant Attorney General, Gary W. Schons, Assistant Attorney General, Raquel Gonzalez and Anthony Da Silva, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

**BEDSWORTH, J.**—A jury convicted Roger Reginald Guzman of one count each of hit-and-run driving and assault with a deadly weapon.[1] The jury acquitted Guzman of a second count of assault with a deadly weapon. We find the prosecutor improperly commented on Guzman's failure to testify and that such comments were not harmless beyond a reasonable doubt. Accordingly, we reverse the judgment.

William Hall was stopped at a red light one morning when he was rear-ended by Guzman in a Chevrolet Blazer. After the collision, Guzman drove around Hall's van and pulled into a nearby shopping center. Hall followed him and then got out of his van to exchange information. Given the damage to their vehicles, Hall told Guzman they would have to call the police. Guzman was reluctant to do that. In fact, he was so reluctant that when Hall went to find a phone, he took off in his Blazer.

Hall got back in his van and began following Guzman. He had trouble keeping up with him at first, but eventually he spotted the Blazer at the end

---

[1] The court ultimately dismissed the hit-and-run count.

of a residential cul-de-sac. He slowly drove toward the Blazer and then came to a stop. Although, in Hall's view, there was "plenty of room" for Guzman to drive around him, Guzman accelerated abruptly and drove his Blazer head-on into the van.

Bewildered and angry, Hall confronted Guzman. A lengthy fistfight ensued, and eventually Guzman threw in the towel: "I've had enough. I'm not going to run anymore." Hall relaxed, thinking the battle was over. However, Guzman retrieved a hammer from his vehicle and attacked him. Hall managed to block the blows, but he could not keep Guzman from running away and jumping over a wall.

A short time later, Vinci Jaekel-Greene, a resident in the area, spotted Guzman in her backyard and asked him what he was doing. He said he had been walking to the store when some guys jumped him and beat him up. He also asked Jaekel-Greene for a ride, saying he lived nearby. Jaekel-Greene told him he needed medical attention and offered to call for help. Guzman responded, "No, don't call the police. Don't call the police."

By that time, however, the police were already in the area. They took Guzman into custody and located a hammer on the side of Jaekel-Greene's house. The police also spoke with Hall, who admitted that when he initially entered the cul-de-sac, he tried to position his van so that Guzman could not drive away.

Marcella Warfield, a witness to the fight, testified she saw Guzman get something from his Blazer and swing it above his head. At that point, she went inside her house and called the police. She did not see Guzman strike Hall with the object.

Accident reconstructionist Jerry O'Brien contradicted Hall's testimony that he was stopped when Guzman rammed him head-on. In O'Brien's opinion, Hall was going about five miles per hour and traveling on the wrong side of the road at the time of the crash. He blamed Hall for the collision because he was trying to hem Guzman in.

*Closing Arguments*

The defense attacked Hall's credibility and asserted he was at fault for the head-on collision. The defense also claimed that Guzman acted in self-defense when he attacked Hall with the hammer.

In rebuttal, the prosecutor attempted to rehabilitate Hall's credibility by showing that he acted more responsibly than Guzman. The prosecutor

emphasized that while Guzman repeatedly tried to flee the scene, Hall spoke with the police and came "to court and testifie[d] two times, [made] himself available, [came] in, put[] himself under oath, testifie[d] two times." In making this point, the prosecutor referred to a demonstrative chart which read:

"Man #1 (Hall) Waits for the police, tells them what happened, comes to court to testify 2 times. (Responsible actions)

"Man #2 (Guzman) Lies to Mrs. Jeckle-Green [*sic*] about circumstances of injuries, again runs from the police, then lies to police about location of weapon. (Criminal actions)"

The defense objected to this line of argument and moved for a mistrial. Counsel claimed, "[W]hat [the prosecutor] is doing, albeit in a [subtle] way, [is] commenting on my client's right to remain silent, which is *Griffin* error in violation of [his] 5th amendment rights. He is alluding to the fact that the victim Hall has been coming into court testifying, he said it twice in a row. Now there is nothing left but for the jury to infer that Mr. Guzman has not been cooperative when, in fact, he gave a full statement of his side of the story [to the police] that the prosecutor elected not to present as evidence."

The prosecutor responded, "[T]he only error is if I comment on the fact that [Guzman] failed to testify. There is no way I am going to do that, not go anywhere near that. My argument is that [Hall] is acting responsible by availing himself to questions. That has nothing to do with [Guzman] not testifying. I am not trying to allude [to] that in any way. If the court feels comfortable, admonish [the jury] that [Guzman] has no obligation to testify."

The court expressed skepticism as to whether the prosecutor was trying to denigrate Guzman's right to remain silent, saying, "Frankly, I did not hear that. I could have a read back . . . , but I didn't hear that and I didn't even pick up on the inference that [defense counsel is] talking about." However, the court did direct the prosecutor "to avoid directly or indirectly commenting on [Guzman's] exercise of his constitutional right[] not to testify at any stage of the proceedings in this matter." The court saw no need to admonish the jury and said it would consider Guzman's mistrial motion after the jury retired for deliberations.

The prosecutor took that as a green light to continue with his argument. He immediately underscored his earlier point that Hall acted responsibly by "subjecting himself to professional cross examination more than once." The prosecutor also ridiculed the defense for failing to explain Guzman's erratic

behavior and false statements: "He (Guzman) committed two [assaults]. But you did not hear at least a defense's version of that. Did you hear a defense version as to yes, lying? Did you hear a defense version as to, yes, telling the police he doesn't know where the hammer is?"

That prompted another objection and mistrial motion by the defense. The prosecutor countered that he was merely referring to defense counsel's failure to address certain issues in her closing argument, not Guzman's failure to testify. As before, the court tentatively ruled in the prosecution's favor and allowed him to proceed with his argument.

The prosecutor concluded his rebuttal by again stressing Hall's willingness to testify. The prosecutor said, "If he (Hall) is guilty as the defense would have you believe, he's got a funny way of showing it. He's got no problem coming in here and telling you what happened, putting himself under oath with a court." In the end, the court found the prosecutor's arguments proper and denied Guzman's request for a mistrial.

The jury convicted Guzman of hit-and-run driving and assaulting Hall with the hammer. However, it acquitted him of assaulting Hall with his Blazer.

*Discussion*

 Guzman argues the prosecutor's remarks violated his Fifth Amendment rights as interpreted by *Griffin v. California* (1965) 380 U.S. 609 [85 S.Ct. 1229, 14 L.Ed.2d 106] and its progeny. We agree.

 The Fifth Amendment states that no person "shall be compelled in any criminal case to be a witness against himself." (U.S. Const., 5th Amend.; see also Cal. Const., art. I, § 15.) In *Griffin*, the Supreme Court recognized this guarantee would have little meaning if the prosecution were allowed to disparage a defendant's decision not to testify. Describing such disparagement as "a remnant of the inquisitorial system of justice" (*Griffin v. California, supra*, 380 U.S. at p. 614 [85 S.Ct. at p. 1232]), the court ruled the Fifth Amendment forbids "comment by the prosecution on the accused's silence." (*Id.* at p. 615 [85 S.Ct. at p. 1233].)

Although the *Griffin* case involved direct reference to the defendant's failure to testify, the decision has been interpreted as prohibiting the prosecution from so much as suggesting to the jury that it may view the defendant's silence as evidence of guilt. (*United States v. Robinson* (1988) 485 U.S. 25, 32 [108 S.Ct. 864, 869, 99 L.Ed.2d 23], quoting *Baxter v.*

*Palmigiano* (1976) 425 U.S. 308, 319 [96 S.Ct. 1551, 1558, 47 L.Ed.2d 810].) Indeed, the California Supreme Court has declared, "Under the rule in *Griffin*, error is committed whenever the prosecutor . . . comments, *either directly or indirectly*, upon defendant's failure to testify in his defense." (*People v. Medina* (1995) 11 Cal.4th 694, 755 [47 Cal.Rptr.2d 165, 906 P.2d 2], italics added.)

 Here, there can be little question that the prosecutor impliedly invited the jury to consider Guzman's failure to testify as proof that his actions were criminal. By the prosecutor's own admission, the underlying thesis of his rebuttal argument was to draw a comparison between Hall and Guzman. In so doing, the prosecutor not only contrasted Hall's decision to speak with the police with Guzman's decision to flee, he also repeatedly emphasized Hall's decision to testify. The prosecutor was careful not to expressly compare this decision with Guzman's failure to testify. But by virtue of his comparative paradigm, the prosecutor rather clumsily alerted the jury to the fact that, unlike Hall, Guzman was not willing to explain his side of the story in court. Moreover, by telling the jury that Hall was "responsible" because he testified, the prosecutor insinuated that Guzman was irresponsible and "criminal" because he failed to do so.

A similar argument was made in *People v. Medina* (1974) 41 Cal.App.3d 438 [116 Cal.Rptr. 133].[2] There, the prosecutor attempted to shore up the credibility of his own witnesses by pointing out to the jury that they were put on the stand, cross-examined and subjected to charges of perjury. (*Id.* at p. 457.) The prosecutor also noted the witnesses' testimony was "unrefuted." (*Ibid.*) The court found, "The net effect of these [remarks] in combination was to urge the jury to believe the testimony of the [prosecution] witnesses because the defendants, who were the only ones who could have refuted it, did not take the stand and subject themselves to cross-examination and to prosecution for perjury. [¶] Little discussion of authority is necessary to demonstrate that this was *Griffin* [citations] error." (*Ibid.*)

Undaunted by the *Medina* decision, the Attorney General attempts to justify the prosecutor's remarks in this case by noting, "A prosecutor may make comments on rebuttal, perhaps otherwise improper, which are fairly responsive to defense counsel's argument and which are based on the record." However, the cases cited by the Attorney General for this proposition do not condone comments directed at, and which denigrate, the defendant's failure to testify. (See *People v. Mincey* (1992) 2 Cal.4th 408, 446 [6 Cal.Rptr.2d 822, 827 P.2d 388]; *People v. Daya* (1994) 29 Cal.App.4th 697,

---

[2]This case is unrelated to the California Supreme Court decision of the same name which is cited earlier in this opinion.

715 [34 Cal.Rptr.2d 884]; *People v. Roberts* (1975) 51 Cal.App.3d 125, 136-137 [123 Cal.Rptr. 893].) Moreover, it cannot be said that the prosecutor's remarks were fairly responsive to defense counsel's arguments. The prosecutor was of course entitled to challenge defense counsel's interpretation of the evidence. But there was no justification for the prosecutor to go beyond that and make an issue of Hall's willingness to testify, because, in the end, this tactic merely drew attention to the fact that Guzman did not take the stand.[3]

The Attorney General tries to downplay the significance of this tactic by characterizing it as a permissible means of commenting upon the defense's failure to introduce material evidence or to call anticipated witnesses. However, there is an important distinction between remarks aimed toward the defense and remarks directed at the defendant. ■ As a general principle, prosecutors may allude to the defense's failure to present exculpatory evidence. For example, the prosecutor may comment on the defense's failure to call logical witnesses or introduce material evidence. (*People v. Miller* (1990) 50 Cal.3d 954, 996 [269 Cal.Rptr. 492, 790 P.2d 1289].) But a prosecutor may "neither comment on a defendant's failure to testify nor urge the jury to infer guilt from such silence." (*People v. Hardy* (1992) 2 Cal.4th 86, 154 [5 Cal.Rptr.2d 796, 825 P.2d 781].) Thus, prosecutors must walk a fine line when treading in this area. A prosecutor may call attention to the defense's failure to put on exculpatory evidence, but only if those comments are not aimed at the defendant's failure to testify and are not of such a character that the jury would naturally and necessarily interpret them to be a comment on the failure to testify. (*U.S. v. Chan Yu-Chong* (9th Cir. 1990) 920 F.2d 594, 598.)

■ In this case, the prosecutor went beyond general commentary on the defense's failure to present exculpatory evidence. For example, at one point the prosecutor derided the fact there was no "defense version as to . . . lying." While phrased as an attack on the defense in general, it was really much more than that because no one other than Guzman could really provide a "version as to . . . lying." By emphasizing holes in the defense case that only Guzman could fill, the prosecutor naturally and necessarily drew the jury's attention to the fact that Guzman did not take the stand. The prosecutor also highlighted this fact by playing up Hall's willingness to testify. As explained, this served little purpose other than inviting the jury to draw a

---

[3]The prosecutor's remarks also implied that Guzman was unwilling to speak with the police, but this is not true. As defense counsel explained to the court, Guzman did tell the police his side of the story. The prosecutor had every right not to introduce this statement at trial. However, for him to then turn around and suggest Guzman was hiding something by not cooperating strikes us as being particularly odious.

negative inference from Guzman's silence. This is not a case where a single isolated comment may have indirectly touched on the defendant's failure to testify. This is a case where the prosecutor repeatedly and flagrantly denigrated Guzman's constitutional right to remain silent. This is *Griffin* error plain and simple.

We must therefore determine whether the prosecutor's remarks were harmless beyond a reasonable doubt. (See *People v. Mincey, supra*, 2 Cal.4th at p. 447; *People v. Miller* (1996) 46 Cal.App.4th 412, 430 [53 Cal.Rptr.2d 773].) The Attorney General insists they were because they "were brief and did not contain any suggestion that an inference of guilt could be drawn." However, the record shows the prosecutor actually mentioned Hall's willingness to testify four times during his rebuttal argument. He also used a demonstrative chart to get this point across. Short of hiring a skywriter, it would have been difficult to make more of it. The combined effect of these techniques was to cast aspersion on Guzman's failure to testify. Thus, in terms of frequency, intensity and purpose, the prosecutor's comments were anything but benign.

The Attorney General would have us affirm nonetheless, based on the fact the evidence was "substantial enough for a jury to conclude that appellant had committed assault with [the hammer]." █ But in the context of a violation of a constitutional right, the state must do more than point to evidence supporting the jury's verdict. It must demonstrate beyond a reasonable doubt that the error did not contribute in any way to the defendant's conviction. (*Chapman v. California* (1967) 386 U.S. 18, 26 [87 S.Ct. 824, 829, 17 L.Ed.2d 705, 24 A.L.R.3d 1065].) This can be achieved when the evidence of guilt is overwhelming and the constitutional error is minor. █ However, in this case, the jury rendered a split verdict, indicating it had doubts about Hall's credibility. And the prosecutor's relentless insistence to the jurors that they consider the contrast between Hall's testimony and Guzman's silence could only have served to convince them this was an important point. We do not believe the state carried its heavy burden of proving the remarks were harmless beyond a reasonable doubt.

The judgment is reversed.

Sills, P. J., and Rylaarsdam, J., concurred.

A petition for a rehearing was denied May 24, 2000.