Filed 11/21/13  P. v. Martin CA3

<u>NOT</u> <u>TO</u> <u>BE</u> <u>PUBLISHED</u>

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Sacramento)

----

| | |
|---|---|
| THE PEOPLE,<br><br>        Plaintiff and Respondent,<br><br>      v.<br><br>STEED ANTHONY MARTIN,<br><br>        Defendant and Appellant. | C071487<br><br>(Super. Ct. No. 11F05708) |

Defendant Steed Anthony Martin molested a 13-year-old family friend (the victim) while she was spending the night at his house with him and his stepson.  A jury found defendant guilty of one forcible lewd act and six other lewd acts (one of which was a lesser included offense of a charged forcible lewd act).

Defendant appeals, raising four issues dealing with prosecutorial misconduct, insufficient evidence, and instructional error.  Disagreeing with defendant's contentions, we affirm.

1

FACTUAL AND PROCEDURAL BACKGROUND

In June 2011, the victim was at her mother's house, where they were throwing a birthday party for the mother's boyfriend. Attending the party were defendant, his wife, and his 13-year-old stepson.[1] The victim had known defendant for about six or seven months, going to dinners, movies, and miniature golf with defendant's family. She called him uncle and thought of him as a father figure.[2] At the party, everyone was drinking alcohol, including the victim, who had two drinks, one given to her by her mother and the other by defendant. At one point during the party while the victim was on the phone, defendant licked her arm and put a beer bottle label on her. Toward the end of the party and just past midnight when defendant's wife had gone back to defendant's house, defendant asked the victim if she wanted to spend the night at his house. The victim's mother said that was fine, so defendant drove the victim and his stepson back to defendant's house. The victim was wearing a T-shirt and pajama pants with an elastic waistband.

They all went straight to the "dude room," which was the garage that had been converted into a television room. Defendant took out a gun from his pocket and put it on the table to the left of the couch. Upon seeing the gun, the victim was "intimidated by it" "[b]ecause it was just scary seeing a gun coming out of somebody's pocket." The victim knew that defendant was in the security business and had seen him with guns before, but "there was something about . . . being in the room with him . . . [a]nd [his] gun being

_____

[1] Defendant was 41 years old, six feet tall, and weighed 238 pounds.

[2] Defendant was a close high school friend of the victim's father and was still a close friend of the victim's mother, although the victim's mother and father were divorced. Defendant employed the boyfriend of the victim's mother at his security business.

placed in front of [her]."[3]  The three sat down on the couch with the victim in the middle and started watching a movie.  While watching the movie, defendant had his stepson get an electric massager and give the victim a massage on her back.  Defendant then had his stepson get a blanket, which the victim put across her legs.  The victim had a pillow on her as well.

After the victim had the blanket on her lap, defendant started touching her.  He put his hand on her knee and scooted his hand toward her thigh.  She "thought it was really creepy and [she] was kind of scared."  The victim did not say anything, and they all continued watching the movie.  With the blanket still over the victim's lap, defendant moved his hand to her vagina and started rubbing her vagina in a circular motion over her pajama bottoms (count one -- lewd act).  At this point, defendant asked his stepson to get water from the kitchen, and he complied.  While his stepson was out of the room, defendant asked the victim "if it was okay."  She said " 'yes,' " because she "was scared he was gonna get mad."  When his stepson came back into the room, defendant still had his hands under the blanket and on the victim's vagina.  She was scared and "kind of freaking out inside" because she "didn't think [defendant] would do something like that."  Defendant then told his stepson to go out and feed the dogs.  With his stepson out of the room, defendant put his hands in the victim's underwear and rubbed her vagina in a circular motion.  He removed it when his stepson came back into the room, and the three continued watching the movie.  During that time, while the blanket and pillow were on her lap, defendant put his finger inside her vagina (count two -- lewd act).  It hurt, and she "was really scared, and really freaked out."  He did the same thing a second time

---

**3**     There was a dispute as to what happened to the gun after defendant put it on the table.  The victim testified defendant immediately told his stepson to put the gun away for him, and the stepson complied.  The stepson testified defendant told him to put the gun away in defendant's room at the end of the night after they had finished watching movies and were going to bed, and he complied.

(count three -- lewd act). He also "took [her] hand and put it on his penis." It felt soft "like spaghetti" (count four -- lewd act of "grabb[ing] the victim's hand and plac[ing] it on his penis, while sitting on the couch, without force or fear or duress").

It was now after 3:00 a.m., and defendant told his stepson and the victim that it was time to go to bed because it was getting late. Everyone stood up and stretched, and defendant "sent [his stepson] to bed and [defendant and the victim] just stood there." Defendant then locked the door. The victim was feeling "[e]xtremely scared, and nervous." He asked the victim to walk over to him and then said, " 'let me finish you off.' " The victim walked over to defendant. He rubbed his face on her cheek and he "just grabbed [her] hair and like held [her] arm." He put one hand down the front of her pants, rubbed her vagina, and then put a finger inside (count five -- "rubb[ing] victim's vagina, while victim was standing up"). He pulled down her shirt and licked her nipple (count seven -- "licked victim's breast, while victim was standing up"). He then unzipped his pants and "t[oo]k [her] hand and put it on his penis." She felt "[a] little freaked out, and grossed out." He "had [her] rub his penis." It felt "[g]ross and hard." Semen came out and landed on the ground (count six -- "lewd act by force or fear or duress, (had the victim rub the defendant's penis until he ejaculated)"). Defendant wiped it up with Windex and a paper towel. He then asked the victim, " 'We're happy, right?' " The victim responded, " 'Yes' " because she "didn't know what he was going to say or be mad at [her] or -- [she] was scared." Defendant said, " 'Goodnight, beautiful' " and left the room.

After defendant left the room, the victim texted her best friend the following morning at 4:00 or 5:00 a.m.: she was in the "[d]ude room and he put his hand on my thigh and at first I thought he was doing it because he was, you know, trying to make me feel comfy, and then he [g]radually moved his hand to there and started rubbing on it and I didn't really notice because I was asleep and all of a sudden he put his hand down my pants and started doing it. And mind you, [his stepson] was sitting right next to me and I

4

had a blanket over myself and a pillow so that's . . . . But like when him and [his stepson] went to bed, sent [his stepson] to bed first, then he stood me up and did it again, and said, oh, let me finish you off, and did it again and made me give him a HJ [hand job]."

At trial, the defense relied on the state of the evidence and argued in closing that defendant was not guilty of any of the charges because the victim's story "just doesn't make any sense."

## DISCUSSION

## I

### *Defendant Forfeited His Misconduct Argument By Failing To Object And/Or Request An Admonition; Counsel Was Not Ineffective*

Defendant contends the prosecutor committed misconduct in her rebuttal closing argument by commenting on defendant's right to remain silent and have the prosecutor prove his guilt. He further contends that if his contention is forfeited, his counsel was ineffective. As we explain, the contention was forfeited, and counsel was not ineffective.

## A

### *The Misconduct*

Defendant did not testify at trial. Defense counsel began her closing argument stressing "the presumption of innocence."

In response, the prosecutor argued in rebuttal: "I'll start from the top in our legal instructions, and the fact that a person is innocent until proven guilty. And that is absolutely correct. We have a great judicial system in our nation, in our country, and we do operate on that premise, you are innocent until proven guilty. That's the case even when you have child molest sexual assault cases, victims, and when the perpetrator like [defendant] here will not stand up and admit what he did, then you have to put the victim on."

5

Defense counsel objected as follows: "Objection. My client has no obligation to -- it's his Constitutional right. Improper argument."

The court ruled as follows: "The objection to that argument is sustained. If you would please proceed."

The prosecutor continued without further objection as follows: "When he denies the allegations, a trial proceeds, and we put the victims on. And the victim has to be traumatized all over again, but that's what we do in our country to protect the rights of innocent people. That's fine, we accept that. But this is not an innocent person now."

B

*Defense Counsel Was Not Ineffective For Failing To*

*Adequately Object And Request An Admonition*

Defendant's misconduct argument is directed at the following two statements above: (1) "when the perpetrator like [defendant] here will not stand up and admit what he did, then you have to put the victim on"; and (2) "[w]hen he denies the allegations, a trial proceeds, and we put the victims on. And the victim has to be traumatized all over again."

"To preserve for appeal a claim of prosecutorial misconduct, the defense must make a timely objection at trial and request an admonition; otherwise, the point is reviewable only if an admonition would not have cured the harm caused by the misconduct." (*People v. Price* (1991) 1 Cal.4th 324, 447, superseded by statute on another point as stated in *People v. Hinks* (1997) 58 Cal.App.4th 1157, 1161.) Here, as to the first alleged misconduct, defense counsel failed to request an admonition and as to the second, she failed to both object and request an admonition.

Defendant has two responses to the failure to object and/or request an admonition. One, he claims admonitions "could not have 'unrung this particular bell' " because the misconduct was egregious. Two, he claims counsel was ineffective. We address each in turn, rejecting both.

6

As to the first, we disagree that an objection/admonition would have been futile at unringing the bell.  The prosecutor's comments blamed defendant for making the victim testify because he was failing to admit his guilt.  The comments came one after the other and were a minimal part of a long argument by the prosecutor that was directed at factually refuting defense counsel's argument that the victim made up the entire molestation.  In a situation such as this, if the defense attorney had objected to the second argument and requested an admonition as to both comments, the court could have admonished the jury to ignore the arguments or could have stated that defendant had an absolute constitutional right not to admit his guilt and take the matter to trial.  "This admonition [could have] cured whatever prejudice may have arisen from the prosecutor's argument." (*People v. Carr* (2010) 190 Cal.App.4th 475, 484-485 [case cited by defendant where the alleged misconduct that was curable by admonition was the prosecutor's argument in closing, " '[Y]ou didn't hear from the defense' "].)

While we agree the prosecutor should not have commented adversely on defendant's failure to admit his guilt (*Griffin v. California* (1965) 380 U.S. 609, 612-613 [14 L.Ed.2d 106, 109] [The Fifth Amendment prohibits a prosecutor from commenting, directly or indirectly, on a defendant's decision not to testify on his own behalf]; *People v. Guzman* (2000) 80 Cal.App.4th 1282, 1290 [*Griffin* error includes "denigrat[ing] [the defendant's]  constitutional right to remain silent"]), this situation is not comparable in degree to those defendant cites as examples of egregious misconduct (*People v Kirkes* (1952) 39 Cal.2d 719, 724-726 [a timely objection and admonition would not have cured the harm of a prosecutor who stated his belief in defendant's guilt and made statements of fact not in evidence]; *People v. Johnson* (1981) 121 Cal.App.3d 94, 100-104 [a timely objection and admonition would not have cured the harm of a prosecutor who argued a personal belief in the merits in the case based on his personal investigation of the allegations that was not entered into evidence, who argued that certain parts of a witness's testimony were lies based on outside evidence, and who suggested answers to

7

questions the defense attorney failed to ask of a key witness]). In contrast to these cases, the prosecutor's remarks were a minimal part of a long argument directed at factually refuting the heart of the defense case that the victim made up the entire molestation.

This leaves defendant's ineffective assistance argument. He argues counsel could not have had a tactical reason for failing to object to the second improper remark or for failing to request an admonition. Not so. Defense counsel could have decided that rather than objecting further or requesting admonition, the instructions orally delivered by the court and the ones that were going to be distributed in writing to the jury during deliberations would have cured any problem from the prosecutor's improper argument. Specifically, right before closing argument, the court instructed the jury as follows: "Do not let bias, sympathy, prejudice, or public opinion influence your decision." "A defendant has an absolute Constitutional right not to testify. He or she may rely on the state of the evidence and argue that the People have failed to prove the charges beyond a reasonable doubt. Do not consider for any purpose at all the fact that the defendant did not testify. Do not discuss that fact during your deliberations or let it influence your decision in any way." The court also told the jury it would "give you a copy of the instructions to use in the jury room." The copy included both of these instructions. Because we can conceive of this tactical reason for counsel's actions, defendant cannot prove counsel's performance deficient, which is the first prong of an ineffective assistance argument. (See *People v. Waidla* (2000) 22 Cal.4th 690, 718 [counsel's deficient performance is the first prong of an ineffective assistance of counsel analysis].)

II

*There Was Sufficient Evidence Of A Forcible Lewd Act To Support*

*Count Six (The Victim Masturbating Defendant)*

Defendant contends there was insufficient evidence of a forcible lewd act to support count six. The jury's verdict stated it found defendant had committed "a lewd act by force or fear or duress" for count six, which was defendant "ha[ving] the victim rub

8

[his] penis until he ejaculated." Defendant argues there was no evidence of any direct threat of force or violence or any implied threat of force, violence, danger, hardship or retribution. Simply put, he argues, "[t]here was no direct or implied threat whatsoever." As we explain, we disagree because even the law and facts defendant cites illustrate the sufficient evidence here.

We focus on the law of duress and the facts related to it, as that is where defendant directs the majority of his discussion. As defendant notes, duress as used in the statute here means " 'a direct or implied threat of force, violence, danger, *hardship* or retribution sufficient to coerce a reasonable person of ordinary susceptibilities to (1) perform an act which otherwise would not have been performed or, (2) acquiesce in an act to which one otherwise would not have submitted.' " (*People v. Leal* (2004) 33 Cal.4th 999, 1004, quoting *People v. Pitmon* (1985) 170 Cal.App.3d 38, 50.) " '[D]uress involves psychological coercion' " and " 'can arise from various circumstances, including the relationship between the defendant and the victim and their relative ages and sizes.' " (*People v. Espinoza* (2002) 95 Cal.App.4th 1287, 1319-1320.) " 'Other relevant factors include threats to harm the victim' " and " 'physically controlling the victim.' " (*People v. Veale* (2008) 160 Cal.App.4th 40, 46.) But psychological coercion without more does not establish duress. At a minimum there must be an implied threat of force, violence, danger, hardship or retribution. (*Espinoza*, at p. 1321.) Finally, duress is "objective in nature and not dependent on the response exhibited by a particular victim." (*People v. Soto* (2011) 51 Cal.4th 229, 246.)

Here, the facts were sufficient to find count six occurred under duress. Defendant was a large man (six feet tall and 238 pounds) who was a father figure to the 13-year-old victim and was 28 years older than she. He took her to his home after midnight and upon entering the "dude room", he immediately took his gun out and placed it on the table adjacent to the victim in her plain view. Regardless of how long the gun remained there, defendant's act of displaying his gun in front of the victim ensured she knew he had

9

access to a gun.  Right before having the victim masturbate him, he sent his stepson to bed and locked the door to the "dude room".  While defendant argues this did not prevent the victim from leaving the room, it did prevent anybody else from coming to the victim's rescue, now that the acts defendant was about to perpetrate on the victim were not being concealed by the blanket.   From this environment defendant had created -- one in which defendant occupied a position of trust over her, one in which he was physically dominant over her, one in which she knew he had access to a gun, and one in which he isolated her from anybody else who could possibly come to her aid when it was late at night -- a jury could reasonably find that defendant psychologically coerced her into masturbating him with the implied threat of physical violence.

III

*CALCRIM No. 1111 Was Correct Because A Common Sense Reading*

*Implies Defendant's Knowledge Of The Victim's Fear*

Defendant contends the instruction on force in CALCRIM No. 1111 was wrong because "it contained language that could reasonably lead the jury to believe that the . . . offense could be accomplished by fear based solely upon the victim's fearful state of mind, without proof that the defendant was aware of the victim's fear and that he acted to exploit it."  Because he argues the instruction was wrong as a matter of law, we consider this contention even though he did not object to it in the trial court.  (*People v. Kelly* (2007) 42 Cal.4th 763, 791 [a claim that an instruction is not "correct in law" may be raised on appeal despite the failure to object below].)

The part of the instruction he challenges is as follows:

"The defendant is charged in Counts 4 and 6 with a lewd and lascivious act by force or fear on a child under the age of 14 years . . . .

10

"To prove that the defendant is guilty of this crime, the People must prove that:

"[¶] . . . [¶]

"2, in committing the act, the defendant used force, violence, duress, menace, or fear of immediate and unlawful bodily injury to the child or someone else;

"[¶] . . . [¶]

"An act is accomplished by fear if the child is actually and reasonably afraid."

Defendant contends "[t]hus, this instruction permitted the jury to find that the defendant used fear to commit the offense based solely on the victim's fearful state of mind, without proof that the defendant himself had knowledge of that fear and used it as a means of committing the offense."

As we explain, the instruction did not permit the jury to so find. We begin by noting the standard that defendant is employing in making his instructional argument. He claims that the instruction is wrong because there was " 'a reasonable likelihood that the jury has applied the challenged instruction in a way that violates the Constitution,' " namely here, it reduced the People's burden of proof on an element of the offense. The standard that defendant is employing is a familiar one and states in full as follows: "in reviewing an ambiguous instruction . . . we inquire 'whether there is a reasonable likelihood that the jury has applied the challenged instruction in a way' that violates the Constitution." (*Estelle v. McGuire* (1991) 502 U.S. 62, 72 [116 L.Ed.2d 385, 399].)

The fundamental problem with defendant's argument is there was no ambiguity in the instruction. CALCRIM No. 1111 as given here stated the People must prove "defendant used . . . fear of immediate and unlawful bodily injury to the child or someone else." For defendant to use the victim's fear as required by the statute, it is implied that he had to know about it. Thus, a common sense reading of the instruction necessarily implies defendant's knowledge of the victim's fear. This common sense reading is confirmed in another case that interpreted CALCRIM No. 1111, *People v. Veale* (2008)

11

160 Cal.App.4th 40. In *Veale*, the court explained as follows: "CALCRIM No. 1111 states, as to a violation of section 288, subdivision (b) based on the use of fear, that the jury must find that the *defendant used the victim's fear* of immediate harm as a means of molesting the victim." (*Veale*, at p. 51, italics added.) Although the issue in *Veale* was different than here,[4] its description of the jury instruction contains the same common sense reading that we give it, i.e., knowledge is implicit in the instruction because a defendant could not use the victim's fear as a means of molesting her if he did not know about it. For this reason, the instruction did not have to explicitly require the jury to find the perpetrator knew of the victim's fear, as defendant contends.

IV

*Defendant's Contention That The Court Erred In Failing To Define Menace Is A Nonstarter Because The Jury's Verdict Specifically Excluded Menace From Its Findings*

Defendant contends the court should have instructed on the legal definition of menace.

Defendant's argument is a nonstarter because the jury's verdict necessarily excluded menace from its findings. Specifically, the jury's verdict for count six was guilty for committing a "lewd act *by force or fear or duress*, (had the victim rub the defendant's penis until he ejaculated)." (Italics added.) Because the jury's verdict excluded menace, we do not address defendant's instructional argument directed at failing to define the term menace.

---

[4]    In *Veale*, the defendant unsuccessfully argued the instruction was "an inaccurate statement of the law because the jury cannot find duress or fear unless there is evidence that the victim's participation was impelled by an implied threat." (*People v. Veale*, *supra*, 160 Cal.App.4th at p. 51.)

DISPOSITION

The judgment is affirmed.

      ROBIE      , Acting P. J.


We concur:


      BUTZ      , J.


      HOCH      , J.