Filed 3/12/25  P. v. Cortez CA2/5

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION FIVE

| | |
|---|---|
| THE PEOPLE, | B335036 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. BA501938) |
| v. | |
| RICARDO CORTEZ, | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of Los Angeles County, Ray G. Jurado, Judge.  Affirmed.

Maura F. Thorpe, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Senior Assistant Attorney General, Taylor Nguyen and Herbert S. Tetef, Deputy Attorneys General for Plaintiff and Respondent.

A jury found Ricardo Cortez not guilty in count 1 of assault with intent to commit rape or sexual penetration (Pen. Code,[1] § 220, subd. (a)(1)), but guilty of the lesser included crime of simple assault (§ 240).  In count 2, the jury found him guilty of sexual battery by restraint.  (§ 243.4, subd. (a).)  The trial court sentenced Cortez to a term of four years six months in prison.  On appeal, Cortez contends that the prosecutor violated Cortez's constitutional rights under *Griffin v. California* (1965) 380 U.S. 609 (*Griffin*) by improperly commenting on his choice not to testify at trial.

We affirm the judgment.

## FACTS

At trial, the prosecutor put forth evidence that on the night of December 18, 2021, the victim and her sister were in Grand Park when Cortez approached the victim and sexually assaulted her.  The women were walking together when they noticed Cortez behind them.  They separated to determine whether he was following them.  Cortez followed the victim up a flight of stairs.  When he was about six feet away, she stepped aside to allow him to pass her.  The victim saw Cortez put his hand into a backpack.  This made her think that he was reaching for "something dangerous."  The victim put her hands out.  Cortez tried to lift the victim; she screamed at him.  They fell backwards and Cortez landed on top of the victim, whose head hit the ground.  Cortez's face was touching the victim's face.  Cortez pulled the victim's hair.  The victim asked Cortez why he did that, and he responded, "because I feel like it."  Cortez tried to put his hands

---

[1] All further statutory references are to the Penal Code.

on the victim's chest, but he could not because she was struggling.  Cortez put his hands under the victim's skirt and touched her buttocks and leg.

The victim's sister saw the attack and ran over to pull Cortez off the victim.  The sister grabbed Cortez's shirt and hit him.  She saw Cortez hit the victim in the shoulder and put his mouth on the victim's neck.  The sister called the police.  While she was speaking with the operator, Cortez threatened to hit the women if they did not let him leave.  The women managed to restrain Cortez until the police arrived and arrested him.

## DISCUSSION

### A.    *Legal Principles*

"Under the rule in *Griffin v. California, supra,* 380 U.S. at pages 612 to 613, it is a violation of the Fifth Amendment to the United States Constitution for the prosecutor or court to comment on the defendant's failure to testify.  The *Griffin* rule has been extended to prohibit a prosecutor from commenting, either directly or indirectly, on the defendant's failure to testify." (*People v. Hubbard* (2020) 52 Cal.App.5th 555, 563.)  " '[A] prosecutor may commit *Griffin* error if he or she argues to the jury that certain testimony or evidence is uncontradicted, if such contradiction or denial could be provided *only* by the defendant, who therefore would be required to take the witness stand.' " (*People v. Thomas* (2012) 54 Cal.4th 908, 945.)  "This rule does not prohibit a prosecutor's comments on the state of the evidence, or on the failure of the defense to introduce material evidence or to call logical witnesses.  [Citations.]" (*People v. Hubbard, supra,*

at p. 563.)  *Griffin* is not implicated where "the prosecutor's comments were directed to the general failure of the defense to provide an innocent explanation as to [the circumstances of the offenses] . . . [and the comments] contain[] no references, express or implied, to defendant's own silence . . . ."  (*People v. Medina* (1995) 11 Cal.4th 694, 756.)  " ' " ' "[A] prosecutor is given wide latitude during argument.  The argument may be vigorous as long as it amounts to fair comment on the evidence, which can include reasonable inferences, or deductions to be drawn therefrom." ' " ' [Citation.]"  (*People v. Hubbard*, *supra*, at p. 563.)

Where the prosecutor's comments amount to *Griffin* error, the error is prejudicial if there is "a reasonable likelihood that any of the comments could have been understood, within its context, to refer to [the] defendant's failure to testify."  (*People v. Clair* (1992) 2 Cal.4th 629, 663.)  "[I]n determining whether prejudicial *Griffin* error has occurred, 'we must focus upon *the extent to which the comment itself might have increased the jury's inclination to treat the defendant's silence as an indication of his guilt.*  The risk that a comment will have this effect may become considerable if either the court [fn. omitted] or the prosecution [fn. omitted] "solemnizes the silence of the accused into evidence against him". . . by telling the jury "that from the failure of [the defendant] to testify . . . the inferences from the facts in evidence [should] be drawn in favor of the State."  . . . A forbidden comment, however, is less likely to affect the "substantial rights" of a defendant . . . if that comment merely *notes* the defendant's silence and includes no suggestion that, among the various inferences which might be drawn therefrom, those unfavorable to the defendant are the more probable.  As the court pointed out in *Griffin*, absent such a suggestion "the inference of guilt is not

4

always so natural or irresistible." . . . [A] prohibited comment is [not] necessarily or even ordinarily harmless so long as it is unaccompanied by a statement that silence implies guilt; we simply note that the absence of any such statement tends to mitigate the independently damaging effect of a comment uttered in violation of the *Griffin* rule.' (Italics in original; *People v. Modesto*, 66 Cal.2d 695, 713.)" (*People v. Vargas* (1973) 9 Cal.3d 470, 478–479.)

## B. *Analysis*

Cortez contends that, in voir dire and in closing argument, the prosecutor commented on his failure to testify as evidence of criminal intent in violation of *Griffin*, and improperly shifted the burden of proof to him. Cortez argues "[t]he prosecutor, beginning at voir dire and continuing through closing arguments, continually commented on [his] failure to explain his 'side of the story' arguing that his failure to explain it was 'because they know he's guilty.' "

Cortez has forfeited his challenge to several of the comments he complains of on appeal by failing to object in the trial court. (*People v. Mincey* (1992) 2 Cal.4th 408, 446 (*Mincey*).) Regardless, viewing the prosecutor's statements in context, we conclude that, to the extent that *Griffin* was implicated, it was not prejudicial. We address Cortez's specific concerns in turn.

5

### 1. <u>Voir Dire</u>

#### a. **Conviction Based on Prosecutor's Evidence**

In voir dire a prospective juror commented that he was not sure if he could treat a police officer's testimony in the same way that he would that of other witnesses because in the prospective juror's experience officers often failed to listen to both parties, favoring one party over the other. The juror was asked if the juror could give an officer the same "fair shot" as other witnesses in determining whether to believe their testimony, and responded, "I don't know that I can."

Given the prospective juror's concerns about whether law enforcement officers attempt to hear both sides of the story, the prosecutor sought to clarify whether, if the People met their burden, the prospective juror would be able to render a verdict, regardless of whether Cortez testified or the defense presented *any* evidence. The prosecutor emphasized, "I think this is what I want to make certain is, you have to understand that in a criminal sense, I want to make this very clear, the defendant has a right not to testify, or say anything . . . ." "[S]o in this case, Mr. Cortez cannot be forced to say anything and give his side of the story." "[W]hen I present my witnesses . . . you have to listen to them, and at the end determine, based on their testimony, even if you haven't heard from the defendant, because that's his right, do you believe that I have met the elements in this case. Okay?" "So I just need to make sure that you are able to do that. Is that something you can do?" After the prospective juror confirmed

that he could reach a verdict if the evidence that was presented demonstrated Cortez's guilt beyond a reasonable doubt, the prosecutor asked the jurors as a group: "[A]nyone else on the panel have a difficult time with that? Meaning, if they don't hear both sides of the story, it's just going to be too difficult for them to hear from witnesses that I put on, and to believe that we can come to a guilty conclusion?"[2]

Cortez objects to the prosecutor's statements as comments on his failure to testify. He forfeited this challenge by failing to raise it in the trial court (*Mincey*, *supra*, 2 Cal.4th at p. 446), but even if not forfeited, the argument lacks merit. Understood in context, the prosecutor's comments did not concern the import of Cortez's option not to testify on his own guilt, but rather the general legal principles that (1) a defendant has a right not to testify or to offer any defense, and (2) the prosecution may meet its burden of proof regardless of whether the defendant chooses to affirmatively mount a defense if the prosecution proves every element of a crime beyond a reasonable doubt.

---

[2] The related excerpts to which Cortez objects express the same concept: [Prosecutor:] "So what is required, what's going to be required of you is, if he does not testify, you're going to listen to evidence in this case . . . and whether you think the evidence matches up with what the law requires, the elements of the crimes in this case. . .", [Prosecutor:] . . . even if you haven't heard from the defendant, because that's his right, do you believe that I have met the elements in this case . . .", "[Prosecutor:] Even if you don't hear from Mr. Cortez in this case, because it's his right, are you comfortable still coming to a guilty verdict, as long as I've proven all the elements . . . Because you may not hear from him.", and "Do you understand that he has a right not to testify?. . . Because I need to make sure that you don't hold me to a higher burden that the law requires; right?"

Even if the prosecutor's statements could be considered a comment on Cortez's choice whether to testify, the statements did not concern Cortez's *failure* to testify (he had not yet had the opportunity), and were not otherwise prejudicial. The prosecutor did not express the belief that if Cortez decided not to testify his choice would indicate guilt. Nor did she state or imply that the burden of proof fell to Cortez. In voir dire and throughout the trial, both parties and the court emphasized that Cortez had a right not to testify. The trial court instructed the jury under CALCRIM No. 355 that Cortez had a constitutional right not to testify and that the jury could not consider for any reason Cortez's decision not to testify, or allow that to influence its verdict. The trial court also instructed the jury under CALCRIM No. 220 that Cortez was presumed innocent and the burden was on the prosecution to prove him guilty of the charges beyond a reasonable doubt. We presume that the jurors understood and followed the trial court's instructions. (*People v. Sandoval* (2015) 62 Cal.4th 394, 422.) There is not a reasonable probability that the jury construed the prosecutor's comments to mean that if Cortez decided not to testify the choice would indicate guilt.

### b.    Conviction Based on Circumstantial Evidence

Cortez also objects to the prosecutor's explanation in voir dire of the role of circumstantial evidence in determining intent, expressed through a robbery hypothetical. The prosecutor explained that if the circumstantial evidence pointed to two reasonable conclusions, the jury must accept the explanation that favored the defendant and find him not guilty. The prosecutor

8

stated, "the only kind of direct evidence we would have of what someone is thinking is if they directly say something . . . .", but a person's intent can be inferred through their actions. She proposed a robbery hypothetical in which a person dressed in dark clothing walked back and forth in front of an apartment building, looking inside the front security door and the parking garage. After an hour, a resident left the building, and the person stepped inside before the security door closed and locked behind them. The person then walked up and down a hallway checking apartment doors until they found an unlocked door and entered the apartment. Once inside, the person started looking through different rooms, rummaging in cabinets and drawers. The prosecutor asked the jurors whether, based on these facts, it could infer what the person intended to do. The prosecutor then asked if it would change their perception if the police arrived and asked the person for an explanation, and the person said they were there to fix a faucet. Alternatively, the prosecutor proposed a scenario where the person provided police no reason for being in the apartment.

Defense counsel objected, and the court held a sidebar. Defense counsel argued, "Your honor, it's the *Griffin* issue. There's been a lot of reference to the potential that the defendant might remain silent. I understand we're in voir dire, and I think the law itself has been stated accurately, but there was something about the way it was framed the last time. [¶] And I think my issue was with 'if he doesn't testify, could you find him guilty?' and I think really what the law protects, it's 'could you find him not guilty if he doesn't testify?' [¶] So I think counsel has been right on the cusp of a *Griffin* error."

9

The court overruled the objection, finding that *Griffin* did not apply. The court noted that the prosecution was careful to state several times that the defendant has a right not to testify.

When voir dire resumed, the prosecutor stated, "I guess the thing I'm really getting down to here is, as human beings, can we infer what people are sometimes thinking, or intending to do, even if we don't necessarily hear them say it? [¶] Anyone think that that concept that I just explained is not possible? That unless someone says something, there's no way to know what's going on in their mind? Anyone feel that way?"

Cortez contends that the prosecutor was emphasizing to the jury that there was no way to ascertain his intent if Cortez did not say what he was thinking, with the implication that, if Cortez chose not to testify the jury could take that as evidence of guilt. We disagree with Cortez's interpretation of the prosecutor's comments. As in the previous example, here the prosecutor was explaining a general legal concept—that intent can be proven beyond a reasonable doubt through circumstantial evidence even in the absence of direct evidence of intent in the form of the defendant's statements.

Additionally, in this instance, the prosecutor did not reference the hypothetical robber's decision not to testify at trial. Rather, she discussed the impact of the hypothetical robber's statements or lack thereof *at the scene of the crime prior to arrest.* Such statements are not protected by *Griffin* or the Fifth Amendment. Our Supreme Court has emphasized, "The clause does not . . . 'establish an unqualified "right to remain silent." ' [Citation.] 'By definition, "a necessary element of compulsory self-incrimination is some kind of compulsion." ' [Citation.]" (*People v. Tom* (2014) 59 Cal.4th 1210, 1222–1223.) "[T]he 'broad

10

dicta in *Griffin* . . . must be taken in the light of the facts of that case'—a prosecutor's comment on a defendant's right not to testify *at trial*. [Citation.]" (*Id*. at p. 1223.) "The prosecution may use a defendant's pretrial silence as impeachment, provided the defendant has not yet been *Mirandized*. [Citations.] The prosecution may also use a defendant's prearrest silence in response to an officer's question as substantive evidence of guilt, provided the defendant has not expressly invoked the privilege. [Citation.]" (*Ibid*.) It was not improper for the prosecutor to discuss inferences that can be made from a defendant's statement or silence when confronted by officers at the scene of a crime. Moreover, even if *Griffin* had been implicated, there is not a reasonable probability that the jury could have misconstrued the prosecutor's comments. Cortez did not suffer prejudice.

## 2. Closing Argument

### a. Robbery Hypothetical

Cortez complains that the prosecutor returned to the robbery hypothetical in closing argument, stating: "Even though [the hypothetical defendant] hadn't said anything, just based off contexts, all of those actions and the circumstances surrounding it show us what someone's intentions are . . . So even though someone may not say what they're feeling or what their intentions are, their actions say it for them. And, as human beings, we have to understand how to make those determinations." Cortez also objects to the prosecutor's statement that, "Yes, we don't know exactly what's running

11

through someone's mind, unless they literally tell us, but, like I said, as human beings, we have to make those determinations."

Cortez forfeited any challenge to the above remarks because he failed to object at trial. (*Mincey*, *supra*, 2 Cal.4th at p. 446.) Regardless, as was the case in voir dire, the prosecutor did not violate *Griffin* with her remarks. She simply explained that although there may not be any direct evidence of what the defendant was thinking through his statements, his intent may be inferred through circumstantial evidence. Finally, as we explained above, Cortez did not suffer prejudice.

### b. Victim's Testimony

In closing argument, the prosecutor stated that based on the defense's opening statements, she anticipated the defense would highlight inconsistencies between the victim's preliminary hearing testimony and her testimony at trial to argue that the victim was unreliable and hysterical. To counteract the potential argument, the prosecutor said "[the victim] gave you an explanation of what happened that night was her best memory. But I think what's also important is that this is a woman that now, more than a year and a half later, has come to court and told you to the best of her recollection what happened that night." The prosecutor discussed reasons why the victim's trial testimony may have been inconsistent with her testimony at the preliminary hearing but could still be credible.

Cortez argues that this case is similar to *People v. Guzman* (2000) 80 Cal. App.4th 1282 (*Guzman*). In *Guzman*, the defendant attacked the victim with a hammer after the defendant's SUV and the victim's van collided head-on. (*Id.* at

12

pp. 1284–1285.) At trial, the defendant attacked the victim's credibility, arguing that he acted in self-defense and that the victim caused the head-on collision. (*Id*. at p. 1285.) In closing argument, the prosecutor argued that the victim acted more responsibly than the defendant did, as evidenced by the fact that the defendant fled the scene. In contrast, the victim spoke with police after the incident and twice testified in court. (*Id*. at pp. 1286–1287.) The prosecutor argued that the victim's willingness to speak with police and testify in court evidenced that he was not "guilty" of the head-on collision. (*Id*. at p. 1287.) The court held that this direct juxtaposition of the defendant and the victim was a comment on the defendant's guilt based on his failure to testify at trial, and concluded that the prosecutor had committed *Griffin* error. (*Ibid*.) Because the prosecutor reiterated the argument multiple times, the court held the comments were not harmless. (*Id*. at p. 1290.)

We note that Cortez did not object at trial, and therefore forfeited the challenge on appeal. (*Mincey*, *supra*, 2 Cal.4th at p. 446.) Regardless, we reject Cortez's argument that the prosecutor committed *Griffin* error when she discussed the victim's testimony in argument. Here, unlike *Guzman*, the prosecutor did not compare the victim's willingness to testify to Cortez's decision not to testify. *Griffin* does not prohibit the prosecution from rehabilitating its own witness to explain inconsistencies between pre-trial and trial testimony. *Guzman* is inapposite.[3]

---

[3] Cortez also asserts, without further discussion, that this case is like *Guzman* because the jury rendered a "split" verdict by finding him not guilty of assault to commit rape or sexual penetration in count 1. Absent any discussion of why the cases

13

### c. Failure to Address the Prosecutor's Evidence

Cortez next objects to the prosecutor's argument that defense counsel did not address the evidence that defendant placed his hand under the victim's skirt and touched intimate parts of her body. In closing argument, the prosecutor stated: "That was never even mentioned [in opening statements]. And that's important. And the reason that's important is because, I submit to you, there is no way to explain any of that. To explain how the situation, this interaction is anyone's fault or was created by anyone else but the defendant in this case." Defense counsel did not object.

The prosecutor returned to the issue in her rebuttal: "The evidence in this case was far beyond the defendant just walked up to [the victim and her sister]. So why? Why is it now, for the second time, *the defense refuses to comment on the evidence in this case*? I'll tell you why, because they have no way to explain it. [¶] And, absolutely, they have no burden in this case. *I take full responsibility for putting on the evidence in this case, but they can explain it if they could, if it was possible*, but the reason they keep distracting you from what the evidence in this case is, is because they know he's guilty." (Italics added.)

---

are analogous on this point or further authority to support the assertion, we decline to consider the issue further. (See *Allen v. City of Sacramento* (2015) 234 Cal.App.4th 41, 52 [this court is "not required to examine undeveloped claims or to supply arguments for the litigants"].)

Defense counsel objected that the prosecutor's argument was "improper." The court admonished the jury: "[A]s [the prosecutor] said, and I've indicated several times in this case, the defense doesn't have to do anything. They don't have to put on a defense. They don't have to—the defendant doesn't have to testify. The only person that has to prove anything in this case is the People, [the prosecutor], and they have to prove every part or element of every allegation beyond a reasonable doubt. And this has nothing to do with what the attorneys think."

Generally, a defendant forfeits a challenge to the prosecutor's comments on a specific ground if the defendant did not object on that specific ground at trial. (*People v. Nadey* (2024) 16 Cal.5th 102.) Here, defense counsel's objection to the prosecutor's statements as "improper" was not specific, and defense counsel said nothing to clarify what he meant. Given that the objection immediately followed the prosecutor's statement that defense counsel knew his client was guilty, it seems likely that the objection concerned the improper claim that counsel did not believe in his client's innocence.[4] (*People v.*

_____

[4] Cortez did not challenge the prosecutor's comments on this ground on appeal. Regardless, the trial court prevented any reasonable probability that the jurors construed the prosecutor's comments as evidence that defense counsel believed Cortez was guilty given its immediate admonishment that "this has nothing to do with what the attorneys think" and its instruction pursuant to CALCRIM No. 222 that: "Nothing that the attorneys say is evidence. In their opening statements and closing arguments, the attorneys discuss the case, but their remarks are not evidence. Their questions are not evidence. . . . Do not assume that something is true just because one of the attorneys . . . suggested it was true."

15

*Seumanu* (2015) 61 Cal.4th 1293, 1337.) Because the trial court admonished the jury regarding Cortez's right not to testify in response to this objection, however, we address it on the merits.

We conclude that the prosecutor did not violate *Griffin* in her comments, which were directed to *defense counsel's* failure to provide an innocent explanation for Cortez's behavior–specifically the testimony of the victim that Cortez reached up her skirt, touching her buttocks and leg–based on the facts the prosecution presented. (See *People v. Medina, supra*, 11 Cal.4th at p. 756 [*Griffin* not implicated where comments were directed to general failure to provide an innocent explanation as to why defendant was armed at time of robberies].) "These remarks contained no references, express or implied, to defendant's own silence, and therefore were unobjectionable [under *Griffin*]" (*ibid*.); rather, the comments noted that defense counsel never confronted the evidence of the touching.

We are not persuaded by Cortez's argument that his case is similar to *People v. Vargas, supra*, 9 Cal.3d 470 and *People v. Medina* (1974) 41 Cal.App.3d 438. In *Vargas, supra*, at page 474, the prosecutor stated of the defendants in closing argument, "*And there is no denial at all that they were there.*" The Supreme Court held that "[i]t is quite possible that the prosecutor in this case only intended to point out to the jury that the defense had introduced no evidence to show that defendant or [his codefendant] were elsewhere during the robbery[,]" but that the remarks were sufficiently ambiguous to constitute *Griffin* error. (*Id*. at p. 476.) The court emphasized that "the word 'denial' connotes a personal response by the accused himself. Any witness could 'explain' the facts, but only defendant himself could 'deny' his presence at the crime scene." (*Ibid*.) In *People v.*

16

*Medina, supra,* 41 Cal.App.3d at page 457, three witnesses testified that they were present when the defendants committed the murder. The prosecutor emphasized that the testimony of those witnesses was unrefuted, and that "No one has come forward and said that it is false." (*Ibid.*) Following *Vargas,* the court held that this was *Griffin* error because the only people who could have come forward to deny what the three witnesses said was true were the defendants—the prosecutor's statements could only be construed as a comment on their failure to testify. (*Id.* at p. 459.)

In contrast, as we have discussed, the prosecutor in this case argued that defense counsel had not offered an innocent explanation for the prosecution's evidence that Cortez placed his hand under the victim's skirt and touched her body—not that no one denied what happened or came forward to say the victim's allegations were false. Even if the remarks had been improper, however, the court's immediate admonishment, its instructions forbidding the jury to consider Cortez's choice not to testify in its deliberations, and the parties' continual reminders to the jury that Cortez had the right not to testify, preclude the possibility that Cortez was prejudiced by the prosecutor's remarks.

### d.    Victim's Right to Safety

Finally, Cortez complains that the prosecutor ended her rebuttal by stating: "I'm going to leave you with this. Before [defense counsel] sat down he told you that the defendant has a right not to testify. All those things, correct. When I think about these rights that we have as human beings, I think most importantly we all have a right to do the simplest of things . . . .

17

We have a right to do all these things without being violated as human beings.  [¶] . . . [¶] When a man in the dark preys on you, goes after you, violates you, man, woman, whatever you want to call it, [it] doesn't matter.  That's a right that should not be taken from us.  And on December 18, 2021, the defendant violated [the victim] and took away her most basic right, which was the right to the safety of her own body.  And in his words, because he wanted to.  And that's not okay.  That's not what the law allows for.  [¶] It's for that reason you must, and you should, and you can only come to one verdict in this case, and that's to hold this man liable for what he did to her, that's guilty as to both counts."

Cortez argues that the prosecutor violated his constitutional rights by asking the jury to choose between his right not to testify and the victim's right to safety "as if they were exclusive or even related principles."  Again, Cortez has forfeited this issue by failing to object at trial. (*Mincey*, *supra*, 2 Cal.4th at p. 446.)

Regardless, the claim lacks merit.  In his summation, defense counsel ended by focusing on Cortez's constitutional right not to testify.  Counsel argued, "It's a right that each of us has in this country, and for good reason.  But they're obvious reasons of course, like, somebody wouldn't want to have to testify when you know that what's going to happen is you have to go up against an experienced prosecutor that gets to ask you anything you [sic] want—"  The prosecutor objected and the court over-ruled the objection.  Counsel continued, "I'll just say one other thing about that.  It's a right that we always have.  It's a right that we didn't have under the colonies.  What would happen is you would actually be forced—be brought in and be questioned by a crown prosecutor.  [¶]  When our framers wrote the Bill of Rights, the

18

first ten amendments to the Constitution, they included this in there because they recognized the unfairness in this. Everybody in this country has a right not to ever have to do that. [¶] So hold the government to its burden." Counsel argued that if the jury held the prosecution to its burden it would find Cortez not guilty.

" 'Where the prosecutor on [her] own initiative asks the jury to draw an adverse inference from a defendant's silence, *Griffin* holds that the privilege against compulsory self-incrimination is violated. But where as in this case the prosecutor's reference to the defendant's opportunity to testify is a fair response to a claim made by defendant or his counsel, . . . there is no violation of the privilege.' [Citation.] . . . ' "[The] central purpose of a criminal trial is to decide the factual question of the defendant's guilt or innocence, [citation] . . . ." [Citation.] To this end it is important that both the defendant and the prosecutor have the opportunity to meet fairly the evidence and arguments of one another.' [Citation.] 'It is one thing to hold . . . that the prosecutor may not treat a defendant's exercise of his right to remain silent at trial as substantive evidence of guilt; it is quite another to urge, as defendant does here, that the same reasoning would prohibit the prosecutor from fairly responding to an argument of the defendant by adverting to that silence.' [Citation.]" (*People v. Hubbard, supra*, 52 Cal.App.5th at p. 564, quoting *United States v. Robinson* (1988) 485 U.S. 25.)

Here, defense counsel argued that an innocent person would not testify because they would be interrogated and scrutinized by an experienced prosecutor—implying that if Cortez had testified he would have been unfairly questioned. Counsel

19

urged the jury to hold the prosecution to its burden while suggesting that Cortez was innocent and would have testified in his defense if he did not fear over-zealous questioning.

The prosecutor responded to the argument by acknowledging that Cortez had the right not to testify, but that the victim also had a right to the safety of her body. The implication being that both parties had rights at stake and that the jury should not be persuaded of Cortez's innocence based solely on his assertion of a constitutional right. In such an instance, we cannot conclude that *Griffin* is implicated. (*People v. Hubbard, supra,* 52 Cal.App.5th at p. 564; *United States v. Robinson, supra,* 485 U.S. at pp. 28–34.) Even if such error had occurred, it is not reasonably probable that the jury would have construed the prosecutor's remarks to mean that it must choose between the rights of the two parties. Rather, the prosecutor's argument was a reminder that both parties had important rights, and that the evidence—in particular Cortez's statement that he was touching the victim because he felt like it—supported a guilty conviction. Cortez did not suffer prejudice.

## DISPOSITION

We affirm the trial court's judgment.
NOT TO BE PUBLISHED.


                                MOOR, J.

WE CONCUR:


HOFFSTADT, P. J.


KIM, J.